JOHN M. WAHL *vs.* BENJAMIN C. BARROLL AND NICHOLAS C. SPENCE.—*December*, 1849.

A covenant in a sub-lease of part of a lot of ground, subject to a ground-rent of $75, that the sub-lessee should hold the sub-demised part "free and clear of any other or greater rent than that reserved in the sub-lease," does not run with the land, or bind or charge the residue of the lot with the whole rent of $75, and exempt the sub-leased portion from liability for any part thereof, but with respect to such residue, is a mere personal covenant.

Though this covenant does not run with, or bind the residue, yet it does run with and bind the reversionary interest of the sub-lessor in the sub-leased part, and as against the sub-lessor and his assigns of such reversion, the sub-lessee and his assigns would have their remedy if charged with any other or greater rent than that specified in the sub-lease.

The sub-lessee having, himself, become the assignee of the reversion of the sub-leased lot, the sub-lease and all its covenants are, by operation of law, merged and extinguished, and he holds in the same manner and upon the same terms as if no sub-lease had been made, and he had acquired title by regular assignments from the original lessee.

The words "subject to the originally reserved ground-rent," used in an assignment of a lease, are words of description, and not of contract: if they were omitted, the assignee would still be bound to pay the rent reserved in the original lease.

Appeal from the *Court of Chancery.*

The bill in this case was filed by the appellant against the appellees, on the 20th of October, 1846. The facts of the case are fully stated in the opinion of the chancellor, and of this court.

On the 22nd of July, 1847, the chancellor (JOHNSON,) passed a decree dismissing the bill, accompanied by the following opinion:

"On the 11th of April, 1833, *Micajah Merryman* leased to *John J. Gross* and *John Gross,* a lot of ground in the city of *Baltimore,* for ninety-nine years, with a clause for renewal, reserving an annual rent of $75. *John J. Gross* subsequently purchased the undivided interest of *John Gross,* and then, by indenture dated the 12th of August, 1841, underlet a part of the demised premises to *John Ryland,* for the residue of the

term aforesaid, the said *Ryland* paying for the part so underlet; the annual sum of $37.50, and with a covenant on the part of the lessor, his executors, administrators, and assigns, that on the payment of the rent, &c., the sub-lessee, his executors, administrators and assigns, should enjoy the premises "free and clear of the claim and demand of any person or persons whatsoever, for and on account of any other or greater rent than above reserved thereon." On the same day, *Gross* assigned and transferred to *Daniel B. Banks* his title to the demised premises, and the rent reserved thereon, for the consideration of $400, paid him by *Banks*. *Ryland*, the sub-lessee of *Gross*, died, and *Banks*, as his administrator, sold his interest in the demised premises to the complainant; and afterwards, on the 23rd of September, 1843, for the consideration of $650, he *(Banks,)* sold and conveyed to the said complainant all the interest in the premises which he acquired by his purchase from *Gross*, including, of course, the yearly rent of $37.50, reserved thereon in the lease from *Gross* to *Ryland*. By reason of all which, as it is insisted on the part of the complainant, he became entitled to hold the property mentioned in the sub-lease discharged of the original rent, or of any portion thereof, and that the whole sum of $75, the rent reserved in the lease from *Merryman* to *Gross*, became charged and chargeable upon that portion of the premises not embraced in the said sub-lease. Afterwards, on the 29th of September, 1843, the said *Gross* and *Banks*, to whom *Gross* had mortgaged the premises, conveyed to *Benjamin C. Barroll*, one of the defendants, for value, the residue of the said demised premises, not embraced in the lease to *Ryland*, subject to the ground-rent reserved in the original lease; and on the 30th of January, 1845, *Barroll* conveyed the same property, for a valuable consideration, to the defendant, *N. Carroll Spence*, subject, likewise, to the ground-rent reserved in the original lease, the effect of all which, as alleged by the complainant, was to make *Barroll* and *Spence*, the defendants, equitably liable to the landlord, *Merryman*, for the whole amount of the rent reserved in the original lease, and not merely for a proportional part thereof, they having had

37    v. 8

notice, as alleged, before they received transfers of the property, of the actings and doings of *Gross*, in relation thereto, but that, nevertheless, the complainant has been compelled to pay to the original lessor, *Merryman*, divers sums of money, which are mentioned in the bill; they, the defendants, having refused to pay the whole amount thereof. The prayer of the bill is, that the defendants may respectively be compelled, by decree, to pay the whole amount of the rent which fell due whilst they severally held the premises, and that the portion thereof which was conveyed to them, may be declared liable therefor, during the residue of the term, and that the complainant may hold and enjoy his part free and discharged from any part thereof.

" The defendants, in their answer, deny the jurisdiction of a court of equity to decree the relief asked for by the bill, and as, after attentively considering the question, and the arguments of the counsel on both sides, I concur with them in that opinion, I do not consider it necessary to say anything upon the other question which has been drawn into the discussion. I am very clear that I have no power to declare, that any part of the demised premises shall be exempt from the claim of the original lessor, *Merryman;* for, though a sub-lessee may not be liable to be sued for rent on the covenants of the lease, he is certainly liable to be distrained for the rent during his possession. 2 *Story's Equity*, sec. 687. To decree, then, that any part of the premises shall be discharged from the payment of the rent, would be an invasion of the right of the landlord, and is, therefore, inadmissible. That part of the relief prayed by this bill, which seeks to exonerate the premises held by the complainant from the payment of any part of the rent, cannot, consequently, be granted.

" With regard to the prayer to have refunded to the complainant the rents which he has been compelled to pay to *Merryman*, the original lessor, I am of opinion that there is an adequate legal remedy, and, consequently, that this court has no jurisdiction. Assuming that the complainant is right in supposing that, according to the instruments under which he holds, the premises embraced in the lease from *Gross* to *Ryland*

were to be exempt from the payments of any portion of the rent reserved by the lease from *Merryman* to *Gross,* that such was the contract of *Gross,* and that the defendants stand in his shoes, and are to be considered as having contracted to pay the whole rent to *Merryman,* it seems to me to follow, that if the complainant has been compelled to pay any part of that rent, the appropriate remedy is an action at law to recover back the money. It is not like the cases which have been referred to, in which it has been decided, that if one of several persons, who have purchased different parcels of land, liable to a rent charge, is made to pay the whole, he shall be eased in equity, by a contribution from the rest of the purchasers. 1 *Equity Cases,* 113. But this is a bill by a party who, denying his liability to pay any part of the rent, seeks not to make the other purchasers contribute, but to pay the whole amount, which, he alleges, he has been improperly made to pay. It is, as it seems to me, a bill to recover a sum of money which the complainant has paid, laid out and expended for the use of the defendants, for which, of course, the courts of law afford an adequate remedy, and if so, authorities need not be cited to prove that this court cannot interfere. Being of this opinion, I consider it proper to dismiss the bill. It is admitted that *John J. Gross* is insolvent, but that cannot, I think, make any difference. The attempt is to make the defendants pay the several sums of money which the complainant has been compelled to pay, but for which he insists the defendants are liable. If this be so, I am at a loss to see why the courts of law are incapable of affording an adequate remedy. *Adair vs. Winchester,* 7 *Gill & John.,* 114."

From this decree the complainant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, MARTIN, and FRICK, J.

By GEO. M. GILL, for the appellant, and
By ALEXANDER and BARROLL, for the appellees.

DORSEY, C. J., delivered the opinion of this court.

On the 17th of April, 1833, *Micajah Merryman, Jr.*, by indenture of lease in the usual form, demised a lot of ground therein described in the city of *Baltimore*, to *J. Gross* and *J. J. Gross*, for ninety-nine years, renewable forever, reserving a yearly rent of $75. Soon after, *J. Gross* assigned and conveyed all his interest in the demised premises to *J. J. Gross*, his joint lessee. On the 12th of August 1841, *J. J. Gross* sub-leased about a moiety of the said lot to a certain *John Ryland*, for the unexpired term of the original lease, save one year, reserving to the sub-lessor, his executors, administrators and assigns, the yearly rent of $37.50, who covenanted, that upon the payment thereof, &c., the sub-lessee should hold the sub-demised premises free and clear of any other or greater rent. And on the day last mentioned, *J. J. Gross* assigned the ground-rent issuing out of the sub-demised premises, and his reversionary interest therein, to one *Daniel B. Banks*. *John Ryland* having died intestate, *D. B. Banks*, his administrator, assigned all the decedent's interest in the sub-lease to the present complainant; and sometime afterwards, to wit, on the 21st of September, 1843, assigned to him also, with the said last mentioned ground-rent, the reversionary interest under the original lease, which *D. B. Banks* had in the sub-leased lot. On the 29th of September, 1843, *J. J. Gross* assigned to *Benjamin C. Barroll*, in the usual form, all the residue of the lot leased to him by *Merryman*, not included in the sub-lease to *Ryland*, subject to the payment of the ground-rent in the original lease. *J. J. Gross* having become insolvent, *B. C. Barroll*, on the 13th of January, 1845, assigned all his interest in the premises to *Nicholas Carroll Spence*, the other defendant. The complainant, since the acquisition of his title as aforesaid, having been compelled, since the acquisition of title, as above mentioned by *B. C. Barroll*, to pay a portion of the rent reserved in the original lease from *Merryman*, and to make a like payment, since the assignment from *Barroll* to *Spence*, filed in the chancery court the bill before us, against the defendants, *Barroll* and *Spence*, to coerce them

to reimburse him the amounts by him paid as aforesaid to said *Merryman*, and to obtain "an indemnification from the lot of ground assigned, as aforesaid, to the said *Nicholas Carroll Spence*, against all responsibility for the whole of the said yearly rent of $75, and to have the said yearly rent paid out of the said lot of ground so owned by the said *Nicholas Carroll Spence*, and to have the portion thereof owned and possessed by the said *Nicholas Carroll Spence*, charged with the whole of said yearly rent." *Micajah Merryman* not having been made a party to these proceedings, it is apparent that the complainant seeks not to impair or change his rights, to collect his rent from any part of the lot by him originally leased to *J. Gross* and *J. J. Gross*.

To show his claim to the relief sought, the complainant insists, that the covenant of *J. J. Gross*, in the sub-lease made to *Ryland*, that he should hold the lot thereby demised, free and clear of any other or greater rent than that reserved therein, was a covenant running with the land, which bound the residue of the entire lot leased by *Merryman* to *Gross*, and charged it with the whole rent of $75, reserved to *Merryman;* and exempted the lot sub-leased to *Ryland* from liability for the payment of any part thereof. For such a principle no authority has been referred to, which gives to it the slightest support. And the reverse is satisfactorily shown by the case of *Cook vs. the Earl of Arundel, et alios,* reported in *Hardress,* 87. Where it was held, that if a party holding lands charged with a ground-rent, grant part of those lands, and covenant that the lands granted should be discharged of the rent, it is not a real covenant which runneth with the land, and chargeth the land not granted with the whole rent: the court being "clear of opinion, that it was no more than an ordinary and personal covenant, which must charge the heir only in respect of assets, and not otherwise, and thereupon the bill was dismissed." Which bill was filed to charge the land not granted with the entire rent.

Although the covenant to *Ryland*, as to exemption from any other or greater rent than that reserved in the sub-lease,

did not run with or bind the residue of the lot not sub-demised to *Ryland*, in respect to which it was regarded as a mere personal covenant; yet it did run with, and bind the reversionary interest of *Gross* in the sub-leased lot, and as against *Gross* and his assignees of such reversion, *Ryland* and his assignees would have had their remedy, if charged with any other or greater rent than that specified in the sub-lease. But unfortunately for the plaintiff, he has himself become the assignee of the reversionary title of the lot sub-leased to *Ryland*, which sub-lease he held under assignment, and thereby, by operation of law, as far as the rights of the plaintiff are concerned, the sub-lease and all the covenants therein contained are merged and extinguished, and he holds the sub-leased lot in the same manner, and upon the same terms and conditions as if no such sub-lease had ever been made, and he had acquired title to the lot, and the unexpired term therein, as specified in the original lease, under regular assignments from *Gross*, the original lessee, and those claiming under him. Sufficient authorities for this are found in *Webb vs. Russell*, 3 *T. R.*, 393, and *Hughes vs. Robotham*, *ex'cr of J. S.*, 1 *Cro. Eliz.*, 303.

The plaintiff appears to regard the assignment of *D. B. Banks* and *J. J. Gross* to *Benjamin C. Barroll*, stating, that the lot assigned was to be held subject to the originally reserved ground-rent, &c., as demonstrating that the lot thus assigned, which passed but about a moiety of the lot originally leased by *Merryman* to *Gross*, should pay the whole ground rent reserved on the entire lot, and that the sub-leased part of the lot should pay no portion thereof. This construction of the contract of the parties cannot be sustained. Had those words, "subject to the originally reserved ground-rent," been wholly omitted in the deed of assignment, the assignee's obligation to pay the rent, stated in the original lease, would have been the same, with or without their insertion. When thus used, they are not intended as terms of compact, creating a new obligation, having no existence without them, but as merely descriptive of the existing condition of the property, designed by the assignment to be transferred to the assignee. And this view of the

subject is fully sustained by the case of *Wolveridge vs. Steward*, 30 *Eng. C. L. R.*, 312: where *A,* by indenture, executed by himself and *B*, assigned to *B* certain premises, "subject to payment of the rent, and performance of the covenants and agreements, reserved and contained in the original lease." *B* entered under this assignment, and afterwards assigned over to a third person. Held, that *B* was not liable in covenant to *A* for rent, which the latter had been called upon to pay in consequence of the default of *B's* assignee, "the words subject to the payment of rent, &c., being words of qualification, &c., not of contract." In the language of *Lord Tenterden*, referred to in the above case, as used in *Mills vs. Harris, Michælmas term*, 1820, "Those words were not of agreement, but were merely descriptive of the obligations to which the assignee would be liable, as between him and the lessor."

The decree of the chancellor dismissing the complainant's bill of complaint is affirmed, with costs, as well in this court as in the court of chancery.

DECREE AFFIRMED, WITH COSTS.