WILLIAM S. RAYNER *vs.* DAVID WILSON and EBEN
B. HUNTING.

*Construction of a contract—Question whether an Agreement to
assign a Ground rent can be discharged by the Assignment of a
sub-ground rent— What is not a Waiver— When constructive
Notice is insufficient to found a presumption of Waiver thereon—
Rescission of Contract—Indebitatus assumpsit.*

By a contract in writing, made June 5th, 1873, between R. and W. & H.,
the latter agreed to furnish to R., lumber, to the amount of about $2000.00,
and to take in payment therefor "the four rents on Stockton Alley, *as leased*
to A. J. King, amounting to $105 per annum, at 7 per cent., making fifteen
hundred dollars; balance in cash." At the time of this contract, there was
no lease to King, but two days thereafter there was a sub-lease executed by
R. to King, of the particular parcels of ground referred to on Stockton
Alley, upon which rents were reserved amounting in the aggregate to $105
per annum. This sub-lease was not recorded until the 27th of June, 1873.
Under this contract W. & H. furnished to R. lumber amounting to $1718.25.
Of this amount the sum of $218.25 was paid in cash, by R., who in payment
of the balance, $1500, offered to assign to W. & H., the rents reserved on
the sub-lease to King, which offer of payment was declined. In an action of
*indebitatus assumpsit* brought by W. & H. against R., to recover the balance
due for the lumber furnished, it was HELD:

1st. That the tender of an assignment of the sub-rents was not a compliance
with the terms of the agreement, of June 5th, 1873.

2nd. That the plaintiffs were entitled under the contract, to the assignment of
rents reserved on original lease; and were justified in refusing the tender of
the rents reserved on the sub-lease to King.

3rd. That the fact that the plaintiffs received a cash payment on account of
the lumber, after the recording of the sub-lease, and endorsed a receipt
therefor on the contract of the 5th of June, 1873, as being on account of the
cash part of the agreement, in the absence of their knowledge in fact of the
existence or contents of the sub-lease, could not be accepted as a waiver of
all objection to the acceptance of the rents.

4th. That mere constructive notice would not be sufficient upon which to form a presumption of waiver in such case.

5th. That the plaintiffs had a right to rescind the contract and sue in the form of *indebitatus assumpsit,* for the balance due on account of the lumber furnished.

APPEAL from the Court of Common Pleas.

This was an action of *indebitatus assumpsit,* brought by the appellees against the appellant. The facts of the case are sufficiently stated in the opinion of the Court. The verdict and judgment were for the plaintiffs. The defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*John H. Handy,* for the appellant.

*T. A. Linthicum* and *Luther M. Reynolds,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

The questions raised in this case depend on the true construction of the contract between the parties of the 5th of June, 1873. By that contract the appellees agreed to furnish to the appellant, or to his order, lumber to the amount of about two thousand dollars, and to take in payment therefor " the four rents on Stockton alley, *as leased* to A. J. King, amounting to $105 per annum, at 7 per cent., making fifteen hundred dollars ; balance in cash." At the time of this contract there was no lease to King, but two days thereafter there was a sub-lease executed by the appellant to King, of the particular parcels of ground referred to on Stockton alley, upon which rents were reserved, amounting in the aggregate to $105 per annum. This sub-lease was not recorded until the 27th of June, 1873.

Under this contract, the appellees furnished to the appellant lumber amounting to $1,718.25. Of this amount the sum of $218.25 was paid by the appellant on the 10th of October, 1873, in cash, leaving $1500 still due on the account, and for which this action is brought. To pay this latter amount the appellant offered to assign to the appellees the rents reserved on the sub-lease to King; but the appellees refused to accept such assignment as compliance with, and in fulfilment of the contract, and insist that, by the terms of the contract, they were entitled to rents reserved on original or primary lease, and not rents reserved on sub-lease, subject to the covenants and conditions of the original lease of the premises; and whether the appellees are right in the position assumed by them is the principal question in the case.

The Court below instructed the jury, that the rents contemplated by the agreement were rents of a permanent nature, and such as are usually capitalized at a given per cent.; and that, by the deeds offered in evidence, showing the nature of the appellant's title to the lots of ground, and the rents mentioned in the sub-lease from the appellant to King, the tender of an assignment of such rents was not a compliance with the terms of the agreement of the 5th of June, 1873. And in this construction of the contract we entirely agree.

If the sub-lease had been executed and brought to the knowledge of the appellees at the time the contract of the 5th of June, 1873, was entered into, then, possibly, the construction of the contract should be different. For, in the construction of contracts, the Court must not only look to the language employed, but to the subject-matter, and the surrounding circumstances, in order to arrive at the intention of the parties. The Court should seek to place itself as nearly as possible in the position of the parties, so as to view the circumstances as they viewed them, and thus be enabled to judge of the meaning of the words used,

and of their correct application to the things described. *Shore vs. Wilson,* 9 *Cl. & Fin.*, 569 ; *Nash vs. Towne,* 5 *Wall.*, 689. But here, as we have seen, the sub-lease was not in existence when the contract between the parties to this cause was made, nor is it pretended that any specific information was imparted to the appellees as to the nature and character of the rents, or the lease upon which they were intended to be reserved, except as they are described in the contract, to wit, "the four rents on Stockton alley, *as leased* to A. J. King, amounting to $105 per annum, at 7 per cent.; making fifteen hundred dollars." There is certainly nothing in the language thus employed to justify the interpretation that the rents were *to be* reserved on a sub-lease, rather than rents reserved on an existing lease to King. It is clear, we think, that the appellees were entitled under the contract to the assignment of rents reserved on original lease; and that they were justified in refusing the tender of the rents reserved on the sub-lease to King. These latter were not the rents contracted for, and the appellees were not bound to accept rents essentially different in security and value from those agreed to be accepted in payment for the lumber. The parcels of ground sub-let to King being subject to the covenants and conditions contained in the original lease, and to the rents reserved thereon, the rents reserved on the sub-lease are, of course, less valuable than original rents. They may be defeated, and the sub-lessee evicted, and that too without any default of his, but through the default of another lessee or purchaser of other parcels of the lots as originally leased. *Wahl vs. Barroll and Spence,* 8 *Gill,* 288 ; *Patterson vs. Long,* 6 *Beav.* 597.

This case is fully embraced by the well established doctrine, "that the vendor must be prepared and able to convey to the purchaser an estate or interest *substantially* corresponding with that bargained for and agreed to be sold, as well in regard to the tenure, and the situation,

as the condition and natural advantages of the property. Any misdescription of the estate or interest, or of the nature or extent of the property in a material and substantial point, so far affecting the subject-matter of the contract, that it may be reasonably supposed, that, but for such misdescription, the contract would not have been made, at once avoids the contract and releases the purchaser from the bargain, if he so elect.'' *Buchanan vs. Lorman,* 3 *Gill,* 51 ; *Flight vs. Booth,* 1 *Bing., N. C.,* 370, 377 ; *Add. on Contracts,* 169 ; 2 *Kent Com.,* 469, 471 ; 1 *Sug. V. & P., ch.* 7, *sec.* 1. This general principle is fully illustrated by numerous examples furnished in the books. Thus, for instance, if a party has agreed for the purchase of a lease having eight years to run, and instead of eight, it has but six, the purchaser may consider the contract at an end, and bring an action for money had and received, to recover any sum of money which he may have paid in part performance of the agreement for the sale ; and it makes no difference that the vendor may offer the purchaser a proportionable reduction in the amount of the purchase money ; it is sufficient for the purchaser to say, that the interest offered is not that which he agreed to purchase. *Farrer vs. Nightingale,* 2 *Esp. Cas.,* 639. So, where the subject of sale was described as an original lease, whereas it was an under-lease, the misdescription was such as to entitle the purchaser to be released from the contract ; *Mason vs. Corder,* 2 *Marsh.,* 336 ; and, in the case of *Blake vs. Phinn,* 3 *C. B.,* 976, where the purchaser paid a deposit on a contract for the purchase of a lease of a public house, and it being afterwards discovered that the house was comprised with another in an original lease, under which the lessor had a right to re-enter for breach of covenants, in respect of either house, it was held, that the purchaser was not bound to accept the title with an indemnity, but might recover back the deposit. For many other instances, see *Add. on Contr.,* 170, 173.

Rayner *vs.* Wilson & Hunting.

It is contended, however, for the appellant, that because the appellees received $300 on account of the lumber, on the 10th of October, 1873, and endorsed a receipt therefor on the contract of the 5th of June, 1873, as being on account of the cash part of the agreement, they therefore must be considered as having waived all objection to the acceptance of the rents, as at that time the sub-lease to King was of record. But the answer to this argument, is, that there is no evidence whatever that the appellees had knowledge in fact of the existence or contents of the sub-lease; and it would be rather difficult to hold that parties had waived an objection, of which they were not aware. 1 *Sug. V. & P.*, 9, 10, *and* 344 ; *Flight vs. Booth,* 1 *Bing.*, *N. C.*, 370, 379; *Fordyce vs. Ford,* 4 *Bro. C. C.*, 494. Mere constructive notice would not be sufficient upon which to found a presumption of waiver, in such case.

In the argument, a point was made as to the right of the appellees to maintain the action in its present form. But we think the objection is without foundation. The appellees having refused the tender of the sub-rents, and by bringing their action for the recovery of the balance due on account of the lumber furnished, elected to rescind the contract, as it was their right to do, there is no difficulty in the way of their maintaining this action. They recover the price of the lumber, as the consideration paid under the contract which has been rescinded ; the law implying an undertaking to pay for the lumber upon the recission of the contract for the purchase of the rents. *Farrer vs. Nightingale,* 2 *Esp. Cas.,* 639 ; *Flight vs. Booth,* 1 *Bing.*, *N. C.*, 370 ; *Blake vs. Phinn,* 3 *C. B.*, 976 ; *Gillett vs. Maynard,* 5 *John.*, 85 ; *Jenkins vs. Long & Byrne,* 8 *Md.*, 132.

Finding no error in the rulings of the Court below, we affirm its judgment.

*Judgment affirmed.*

(Decided 21st January, 1876.)