## FIELDER C. SLINGLUFF ET AL., TRUSTEES, *vs.* HAMMOND J. DUGAN.

*Vendor and Purchaser—Misdescription of Property—Vacating Sale.*

The advertisement of a trustee's sale of unimproved land in the district recently annexed to Baltimore City set forth that each lot offered fronted on avenues and streets condemned and opened or laid out on the plats; that the then existing county tax rate would continue until the land should be completely built up.   The sale took place at the Real Estate Exchange where a plat was exhibited showing the dimensions of the lots and on which some of the streets were colored and others were not colored.   The latter streets were not actually opened and graded but only laid out to be opened, but this condition was not explained to purchasers.   The appellee bought two lots and afterwards excepted to the ratification of the sale on the ground that one of the lots he bought had a depth of only 46 feet and 6 inches instead of 55 feet as advertised and that the other lot had a front on the street of only 34 feet 6 inches instead of 45 feet as advertised; that this deficiency in the dimensions made a material difference in the value of the lots for building purposes; and the purchaser also excepted on the ground that he was misled as to the existence of the streets and would not have bought if he had known that he could be assessed for the opening of the streets.   *Held,* that these misdescriptions were so material. as to entitle the purchaser to have the sale to him set aside.

Appeal from the Circuit Court of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Jesse Slingluff* (with whom were *T. Rowland Slingluff* and *R. Lee Slingluff* on the brief), for the appellants.

*James H. Preston.* and *Ferdinand C. Dugan*, for the appellee, submitted the cause on their brief.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City setting aside a sale of certain lots made by trustees.    The property offered comprised forty-two acres of land, through which, avenues and streets were laid out, and which was sub-divided into lots as shown on the plat exhibited at the sale.

The advertisement described the property as "unimproved building land" situated in the Belt annexed to the city, and stated that "each lot fronts on avenues and streets sixty-six feet wide, now condemned and opened, or laid out on the plats, to meet, when opened, the requirements of the City survey as now on file in the office of the Commissioners for Opening Streets."    After describing each lot by metes and bounds, the advertisement further stated that the Baltimore County tax rate at the time of the annexation was sixty cents on the hundred dollars, and this will continue until the property is compactly built with more than six houses to the block.    Not only must the rate remain sixty cents on the one hundred dollars, but the assessment cannot be raised from what it was at the date at the annexation.    This property has all city conveniences, such as water, gas, rapid transit railways, mail deliveries, churches, schools, &c.    City water mains run right through it, and the cars of the United Railways and Electric Company traverse it from end to end, and a five cent fare to the heart of the city is provided."

The exceptant, Hammond J. Dugan, purchased lots 24 and 25 as shown on the subjoined copy of that part of the plot where said lots were located.

After the sale was reported, Hammond J. Dugan excepted to its ratification. First, on the ground that the advertisement was misleading in stating that the lots have city conveniences. Second, in stating that the assessment could not be increased—and third because the size, dimensions and location of the lots were improperly described and set out in the advertisement.

The sale was not made on the premises, but at the sales-rooms of the New Real Estate Exchange in the City of Baltimore.   The exceptant testified that he attended the sale by request of the auctioneer to bid upon certain lots for members of the Slingluff family, and without any purpose of purchasing for himself, but that having a copy of the advertisement and a plat of the property, and seeing that lots just south of Lot 24 had sold for $400 or $500 more per acre than was offered for Lot 24, he thought Lots 24 and 25 would be cheap at the price offered, and so believing he bought them ; that he had never seen the property at that time, but knew the general value of land in that vicinity; that after the sale he learned that the advertisement was not correct in stating that the assessment could not be raised until six houses were built on each block, and also discovered that there were neither water nor gas mains laid on any street on which Lots 24 and 25 abutted, and that upon making a survey of these lots he found that the depth of Lot 24 on 4th street was only 46 feet 6 inches instead of 55 feet as advertised, and that the front of Lot 25 on 4th street was only 34 feet 6 inches instead of 45 feet as advertised ; that this deficiency in the dimensions of these lots made a material difference in their value as building lots because Lot 24 could only be improved by buildings fronting on Windsor avenue and fifty-five feet was the least depth which would allow such houses as were adapted for that location, so that there would necessarily be a loss of fifty-two feet on the east end of Lot 24, where there would have been three houses of 17 feet front, if there had been 55 feet in depth as advertised ; and that Lot 25 could only be improved by buildings fronting on 4th street because of its shape, and there could only be two houses where there would have been three, if there had been the advertised depth.   He also testified that the streets and avenues were only partially opened and some were not opened at all, and that water and gas mains would not be laid on these streets until they were put on grade.   It appears from the plat, that Slingluff avenue was colored on the plat, throughout its whole length over this

property as was 9th street south of Windsor avenue and 8th street south of Clifton avenue, and as was Clifton avenue between 8th and 9th streets, and Walbrook avenue between 9th street and Slingluff avenue, but that all the other streets on the plat were uncolored.   On cross-examination Mr. Dugan was asked if the auctioneer did not announce at the sale that only the colored streets had been opened and the others merely laid out to be opened, and replied that he did not remember his doing so, but admitted that he did not ask what significance the coloring of these streets had.    He also admitted that he did not, in purchasing, take into consideration the belief that water and gas mains were laid on the streets on which these lots abutted and that he could not say he was influenced to purchase by such belief, but did say that he thought the property was ripe for development, in other words that possibly the streets were not on grade, but the conditions were such that they could be put on grade and you could go right ahead and improve, and that he certainly would not have bought the property if he had known he could have been assessed for the opening of any of the streets or avenues.

He was sustained as to the materiality of the deficiency in the dimensions of the two lots by the testimony of Richard Sewell, John T. Graham and Frank W. Trimble, all of whom are real estate brokers in Baltimore, whose reasons for their views were substantially the same given by Mr. Dugan, and they all concur in saying that a rateable abatement in price, based upon the deficiency in area, would not be an equitable adjustment where the property, as in this case, was purchased for building purposes.   The trustees offered no testimony, and admit that no streets are open through the property, except those colored brown on the plat; also that no water or gas mains are laid in the beds of the streets shown on the plat within two squares of lots 24 and 25, and that they were in error in stating the assessment could not be increased until six houses were built on each square.   The doctrine is well established "that the vendor must be prepared and able to convey to the purchaser an estate or interest substantially cor-

responding with that bargained for and agreed to be sold, as well in regard to the tenure and the situation, as the condition and natural advantages of the property. Any misdescription of the estate or interest or of the nature and extent of the property, in a material and substantial point, so far affecting the subject-matter of the contract that it may be reasonably supposed, that but for such misdescription, the contract would not have been made, at once avoids the contract, and releases the purchaser from the bargain, if he so elect." *Rayner* v. *Wilson & Hunting*, 43 Md. 444; *Gunby* v. *Sluter*, 44 Md. 247; *Keating, Trustee*, v. *Price*, 58 Md. 536; *Doyle* v. *Whitridge*, 97 Md. 711; and the testimony shows that this case is embraced by this doctrine.

It would be natural to suppose that Mr. Dugan's belief induced by the advertisement, that water and gas mains were laid on the streets on which these two lots abutted, was a material consideration in his purchase, yet it appears from his own evidence that he was not influenced to make the purchase by such belief, and we may therefore dismiss the consideration of that exception.

In reference to the deficiency of these lots in depth upon 4th street, it is perhaps not entirely clear from Mr. Dugan's testimony how far he was influenced by the misstatement of the trustees, but as we understand him, he says he bid so much per acre, with the right to select such lots as were best for the money, and that if he had known of the deficiency in depth he would have selected other lots of more satisfactory depth for building purposes; in other words that he would not have bought these particular lots, and thus he brings this case fairly within the doctrine above stated, and as further illustrated in *Keating* v. *Price, supra*, where it was said, "When it is made apparent that a misdescription relates to a fact materially inducing the purchase, much weight must be given to the purchaser's own estimate of how far the deficiency, in the light of his own judgment and calculations would affect the purposes he sought to accomplish in purchasing the property." But further he states positively and emphatically that

if he had known *these streets* were subject to being opened, and that he could be assessed for such opening he certainly would not have bought the property. In reply to this, the trustees contend that as the advertisement stated that "streets were condemned and opened, *or laid out on the plats, to be opened*," and that as the plats showed certain of these streets were colored and others were uncolored, Mr. Dugan, as a real estate broker, should have known, or should have inquired and ascertained what this meant, and must be taken to know that only the streets colored on the plat had been opened; but we think it was incumbent upon the trustees to explain to the public anything upon the plat, which without explanation, might be unintelligible or positively misleading. They asked Mr. Dugan upon cross-examination if he did not hear the auctioneer state at the sale that only those streets were opened which were colored upon the plat, and though he replied he heard no such statement, they failed to show it was made and did not even attempt to show that such coloring indicated open streets, and that this fact was known either to the public generally or to real estate brokers, and we cannot assume that as a fact and bind the purchaser thereby when his uncontradicted testimony is that he did not know these streets were unopened, and believed them to be opened. This Court said in *Hunting* v. *Walter*, 33 Md. 62, "It would be a great wrong to hold a purchaser who became such through a mistake, and in ignorance of the liabilities he was incurring, to a strict compliance, unless some rule of law required it."

It appears from the trustees' report that at this sale W. H. Grafflin purchased nine lots for $29,457; Mrs. Hunter and Mrs. Whitman, as tenants in common, two lots for $7,285; T. M. Bartholomee, three lots for $2,025; Boston Fear, two lots for $1,525; and Ida B. Roth, two lots for $1,311; almost all of which were on unopened streets, and were without water and gas mains, and it is certainly somewhat singular that none of these larger purchasers have excepted on any of the grounds urged by Mr. Dugan. Their failure to do so would seem to indicate either that they were not misled, or that they are con-

tent with their bargains even if misled, but the proof is clear that Mr. Dugan was misled, and he is not precluded from objecting because others in a like situation decline or fail to do so.

For the reasons stated the order appealed from will be affirmed.

> *Order affirmed with costs to the appellee above and below.*

(Decided January 15th, 1904.)