## CAROLINE L. STARR *vs.* THE MINISTER AND TRUSTEES OF THE STARR METHODIST PROTESTANT CHURCH.

*Merger of Leasehold in After-Acquired Fee Simple Estate—
Executory Devise—Rule Against Perpetuities—Void
Limitation Over in Conditional Devise to Church—
Religious Societies—Power to Sell Property.*

When the reversion in fee of a parcel of land is devised to, or vests in, the tenant for years of the land, holding in the same right, and there is no intervening estate, the term of years is merged in the inheritance, and the lease, with its covenants, ceases to exist.

A limitation after a fee cannot take effect as a remainder, but may be good as an executory devise.

An executory devise to be valid must take effect upon a contingency or event that must happen within the life or lives of those in being at the death of the testator and twenty-one years thereafter, and if the contingency or event may not happen within that time, the limitation is bad, although the event does in fact occur within that time.

A devise of property to a corporation to be held by it until a certain event occurs, when there is a limitation over, is in violation of the Rule against Perpetuities, if that event may not happen within the existence of a life or lives in being and twenty-one years thereafter, and in such case the devisee takes an absolute fee in the property.

S. leased a lot of ground to a church corporation upon the condition that it and the church building erected thereon should be used for the purposes of a congregation under the control of a certain conference; that no musical instruments should ever be used in worship; that the sexes should be separated in seating, etc. The lease provided for a re-entry and its termination by the lessor or assigns upon a breach of any of the conditions therein. The charter of the church corporation provided that it should hold the property about

to be demised to it upon these same conditions, and that the trustees should have no power to mortgage it. Afterwards S. died leaving a will, by which he devised to the church the yearly rent reserved by the lease, to be held during all such time as may elapse before the church authorities shall admit any musical instrument in the church services, or shall hold any fair or festival, etc., "when and upon the happening of any one of these contingencies," the said ground rent should fall in the residuum of the testator's estate. The church corporation filed the bill in this case asking for a decree directing a sale of the land, since the locality had ceased to be a residential district, and that the proceeds be used in the erection of a church elsewhere to be held on the terms specified in the lease and the will. *Held,* that under the lease the church took the property in its own right, and not as trustees; that this leasehold estate was conditional and liable to be defeated by the re-entry of the lessor or his heirs upon the failure to comply with the conditions.

*Held,* further, that by the devise to the church of the reversion in the lot, the leasehold interest was merged and extinguished, and thereafter the church held the property in fee under the will until the church authorities did any of the things specified in the will as affecting the duration of the estate.

*Held,* further, that since the limitation over of the property to the residuary devisees by way of executory devise was to take effect when the church authorities did any one of these specified things, and since these things might not be done within the period covered by a life in being at the death of the testator and twenty-one years thereafter, this limitation is void because in conflict with the Rule against Perpetuities.

*Held,* further, that since the limitation over is void because repugnant to law, the church took an absolute fee simple estate discharged therefrom.

The provision in the charter of a church corporation that it should hold certain leasehold property about to be demised to it on certain conditions is not applicable when the church afterwards acquires the fee in the property.

A provision in the charter of a church corporation that it shall not have power to mortgage its property does not operate to prevent a sale of the property in case it should become necessary to sell in the interest of the church.

The rule that words in a grant or devise indicating the use to which the property conveyed is to be applied do not of themselves create a condition, is applicable in the construction of the charter of a church, in relation to a statement of the purposes for which property given to it shall be used.

*Decided January 12th, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Covington D. Barnitz* and *Frederick W. Story,* for the appellant.

*Bernard Carter* and *Alonzo L. Miles,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1864 Wesley Starr and Phillipa Starr, his wife, of Baltimore City leased and demised to the Starr Methodist Protestant Church in Baltimore City a lot of ground, with the improvements thereon, on the corner of Poppleton and Lemon streets, in said city, for the term of ninety-nine years, renewable forever, subject to the payment of the yearly rent of two hundred and forty dollars, and the following provision: "Provided, however, and these presents are on these express and unalterable conditions, that the above-described lot of ground, with the house of worship erected and in process of completion thereon, shall be held by the said lessees, their successors and assigns for the use of the congregation that shall from time to time worship in the said house or church in connection with the annual Conference of the

Maryland District of the Methodist Protestant Church; so, however and under all circumstances, that the seats in the said church shall be and remain forever free; that the congregation in occupying the said church or any church edifice hereafter to stand on said ground shall observe the old Methodist usage of a separation of the sexes in seating; that in public worship the singing shall be conducted in the old-fashioned way of lining the hymns; that there shall be no organ or other kind of musical instrument employed or used during divine worship in connection with the singing in said church; the trustees to have no power to raise money for completing the church, nor for any other purpose, by mortgage of the property and premises, or to incur any debt for such or any other purpose, to bind the property or thereby subject the same to a sale and removal of the restrictions herein provided for. That the church, in addition, is always to remain under the stationing authority of the said conference, and is to receive such minister or ministers, from time to time, as shall be duly appointed to or for it, pursuant to the Constitution and Discipline of the Methodist Protestant Church, so as to perpetuate an efficient itinerancy, without power or authority to assume an independent relation to said annual conference." The lease further provided for a re-entry and termination of the lease by the lessor, his heirs or assigns, upon the breach or non-performance by the lessees or their assigns of any of the covenants or conditions in the lease.

On the day preceding the execution of the lease, that is to say, on the 17th day of May, 1864, the lessee, the minister and trustees of the Starr Methodist Protestant Church in Baltimore City, was duly incorporated under the general corporation laws of the State, relating to religious corporations, and Article 10 of its Charter is as follows: "The property and premises at the southwest corner of Poppleton and Lemon streets, in the City of Baltimore, about to be demised to this corporation by Wesley Starr and wife, shall be held by said trustees for the use of the congregation that shall from time to time worship in the house or church erected on said lot of

ground, in connection with the annual conference of the
Maryland District of the Methodist Protestant Church, so
however and under all circumstances that *the seats* in the
said church *shall be* and remain *forever free;* that the con-
gregation, in occupying the said church or any church edifice
hereafter to stand on said ground, shall observe the old Meth-
odist usage of a separation of the sexes in seating; that in
public worship the singing shall be conducted in the old-
fashioned way of lining the hymns; that there shall be no
organ or other kind of musical instrument employed or used
during divine worship in connection with the singing in said
church.   The trustees to have no power to raise money for
completing the church, nor for any other purpose by mort·
gage of the property and premises, or to incur any debt for
such or any other purpose to bind the property or thereby
subject the same to a sale and removal of the restriction here-
in provided for; that the church, in addition, is always to
remain under the stationing authority of the said confer-
ence, and is to receive such minister or ministers from time
to time as shall be duly appointed to or for it pursuant to the
Constitution and Discipline of the Methodist Protestant
Church, so as to perpetuate an efficient itinerancy, without
power or authority to assume an independent relation to said
annual conference."

In 1866 Mr. Starr died, leaving a will by the second para-
graph of which he gives to his daughter-in-law, Mrs. Laura
Starr, for "such time only as she shall remain the widow of
Wm. M. Starr, deceased," the yearly rent reserved in the
said lease to the Starr Methodist Protestant Church, and the
third paragraph contains the following provision: "I give and
devise, at my death, unto the Minister and Trustees of the
Starr Methodist Protestant Church in Baltimore City, as a
kind of endowment, the rents, profits and yearly income of the
wharf opposite the lot on Light street, in said city, purchased
by me on the 1st day of January, 1842, of John H. B.
Latrobe, trustee and others; and at the death or marriage of
my daughter-in-law, Mrs. Laura Starr, whichever shall first

occur, the yearly rent of two hundred and forty dollars re-
served in the said lease from me to them of May last; to be
held and enjoyed by the said church, for and during all such
time as may elapse before the corporate authorities, official
members or membership of the said church, shall admit any
musical instrument, as distinguished from the human voice,
into the Sabbath School, singing choir, or choir rehearsals, or
singing schools of said church, held either on the church
premises or elsewhere, or shall attempt—I trust they never
will—to raise money, by the holding now somewhat fashion-
able—either in the church, or Sabbath School room or else-
where, of any fair, festival or concert of instrumental music;
or by the delivery of any irreligious or political lecture, or
the still more demoralizing and sinful mode, should the
churches ever so far degenerate as to adopt it, of balls, parties,
lotteries, theatrical performances, raffles, or the voting for
distinguished individuals; when, and upon the happening of
any one of these contingencies, the said wharf property and
ground rent shall fall into the residuum of my estate, and be
subject to the disposal hereinafter made thereof, and I give
and release unto said church all ground rent in arrear under
my lease to them, and the accruing rent, computed to the day
of my decease."

The fourth paragraph of the will disposes of "All the rest
and residue" of the testator's estate, and by a codicil to his
will he revokes the devise of said ground rent to his daughter-
in-law, and declares, "it is my will that the said yearly rent
shall vest at once on my decease in the Minister and Trustees
of the Starr Methodist Protestant Church in Baltimore City,
instead of at the death or marriage of Mrs. Laura Starr, as
provided for in the third article of my will, the tenure of
the property or conditions of the gift to remain unchanged as
prescribed in the will."

The suit in this case was brought by the "Ministers and
Trustees of the Starr Methodist Protestant Church in Balti-
more City, the body corporate, against the heirs at law of
Mr. Starr, and the bill of complaint, after alleging the exe-

cution of the lease, and the death of Mr. Starr leaving the last will and testament and codicil to which we have referred, charges that the plaintiff by said will acquired a fee-simple title in said property, "subject to such restrictions as may found in said will," and further alleges that the plaintiff, during the forty-two years since the death of Mr. Starr, "has remained in possession of the property, conducting it as a place of public worship, under the auspices of the Maryland Annual Conference of the Methodist Protestant Church, and has not been disturbed in its possession and use of the same;" that during the lifetime of Mr. Starr, and at the time said lease and will were executed, "the location of said property when said church was being built," at the time of Mr. Starr's death, "was a residential section of Southwest Baltimore, where it was proper that a church should be erected; that during the time which has elapsed since" his death, "the particular locality * * * has become a manufacturing centre and the changes as to the condition of the property and the circumstances attending it and its surroundings, render it impossible for" the plaintiff "to longer hold the property and carry out the intent of the testator," and that "it is absolutely necessary, and would be for the benefit" of the plaintiff "and of all the parties interested therein, that the property be sold and the proceeds invested in the purchase of another site and the erection of a church thereon, so that the will of the testator may be enforced." The prayer of the bill is for a decree authorizing a sale of the property and appointing a trustee to make the sale and to invest the proceeds under the order of the Court, and for general relief.

Four of the defendants, who allege that "they have an interest in the residuum of the estate" of the testator, and are "entitled to share therein," answered the bill of complaint, denying that the plaintiff acquired by the will a fee-simple estate in the property, and that it is necessary and would be for the best interest of the plaintiff and all parties interested "that said property be sold and the proceeds invested in the purchase of another site and the erection of a church there-

on" and averring "that under its charter the plaintiff is absolutely without power to sell" the property.

It is stated by counsel for the appellee in their brief that two of the other defendants filed answers denying the right of the plaintiff to the relief sought, and that the other twelve defendants answered "saying that they thought that the property should be sold, and the proceeds invested in the purchase of another site in a more suitable neighborhood, and the erection of another church to be known as 'Starr Church;'" adding that the said sale should not be decreed until plaintiff shows, to the satisfaction of the Court, its ability to purchase another site and erect thereon another edifice to be used as a church and called the 'Starr Church,'" but these answers are not in the record in this Court.

The testimony was taken in open Court, and the Court below passed a decree, reciting that it appeared "that it would be for the best interest of the plaintiff and all other persons interested in the church work, that the said lot of ground * * * should be sold," etc., ordering a sale of the property and appointing a trustee to make the sale and further ordering "that the proceeds arising from the sale of said property shall be applied to the purchase of another lot of ground to be selected by the board of trustees of the plaintiff corporation, and the erection thereon of a suitable church building for the carrying on of the work and the accomplishment of the purposes designed by the said Wesley Starr, provided, however, that no sale reported by the said trustees shall be ratified until and unless the plaintiff corporation shall have furnished in this case to the Court satisfactory evidence that it can provide, in addition to the proceeds arising from the sale of the property, an amount of money, if necessary, which when added to the net proceeds of said sale, will be sufficient for the securing of a site and the erection thereon of a suitable church building for the carrying on of the work and the accomplishment of the purposes designed by the said Wesley Starr; and provided further that the property so to be acquired by the plaintiff corporation shall be held as the same estate which it

now has in the property hereby decreed to be sold; and the said property so to be acquired by the plaintiff corporation shall be subject to any conditions and limitations which may now be in force, if any, in respect to the property hereby decreed to be sold," and from that decree only one of the defendants has appealed.

From the foregoing statement of the case, it is apparent that the primary inquiry is as to the character of the plaintiff's present estate in the property. By the lease executed in 1864, Mr. Starr conveyed to the Minister and Trustees of the Starr Methodist Protestant Church in Baltimore City, the body corporate, a leasehold interest in the property to be used for the purposes for which the church was incorporated. He did not thereby create a trust. The gift was to the church in its corporate name for its own use, and no trust or other use was contemplated or intended by the lessor. The plaintiff, therefore, held the property under the lease in its own right and for its own use, and not as trustee. *Woman's Foreign Miss. Society* v. *Mitchell,* 93 Md. 199; *Erhart* v. *Baltimore Monthly Meeting,* 93 Md. 669; *Doan* v. *Ascension Parish,* 103 Md. 662.

The estate conveyed by the lease was a conditional estate, and was liable to be destroyed by a failure of the lessee to comply with the conditions of the demise and a re-entry and termination of the lease by the lessor, his heirs or assigns. The reversion or estate of the lessor, could have been conveyed or devised by him, and would have descended to his heirs at law, if he had died intestate, with the benefit of the conditions in the lease. But when the reversion is conveyed, devised or descends to the lessee, the estate of the latter, if held in the same right, and there is no intervening estate, merges in the reversion and is extinguished.

Blackstone says: "If there be a tenant for years, and the reversion in fee-simple descends or is purchased by him, the term of years is merged in the inheritance, and shall never exist any more" (2 *Blck.,* star page 177). And CHANCELLOR KENT says: "There would be an absolute incompatibility

in a person filling, at the same time, the characters of tenant
and reversioner in one and the same estate; and hence the
reasonableness, and even necessity, of the doctrine of merger.
The estate in which the merger takes place is not enlarged by
the accession of the preceding estate; and the greater and
only subsisting estate continues after the merger, precisely
of the same quantity and extent of ownership as it was before
the accession of the estate which is merged, and the lesser
estate is extinguished." 4 *Kent Com.,* star pages 99-100.
In 24 *Cyc.* 1342, it is said that: "Where the lessee of land
becomes the owner thereof in fee, the lease is terminated, and
the lesser estate is merged in the greater. This rule is held
to be of the same general application without regard to
whether the tenant acquired title by a voluntary deed of the
landlord, by descent, devise, purchase at execution or judicial
sale, or by mesne conveyances." The same rule is recognized
in 1 *Washburn R. Prop.,* sec. 740 (6th ed.); 18 *Am. & Eng.
Ency. of Law,* 353 (2nd ed.); 2 *Pomeroy's Equity,* secs. 786-
800; *Wahl* v. *Barroll et al.,* 8 Gill, 288; *Story* v. *Ulman,* 88
Md. 244.

The principle that equity does not favor merger and
a merger of the lesser in the greater estate will not be
allowed when it would be contrary to the intention and
against the interest of the party in whom the two estates
conincide, has no application to this case, nor have the cases
of *Johnson* v. *Hines,* 61 Md. 122; *McLaughlin* v. *McLaugh-
lin,* 80 Md. 116, and *Wehrhane* v. *Safe Deposit Co.,* 89 Md.
179, cited by the appellant. In the first of these cases the
Court held that certain judgments were not merged in a mort-
gage given as collateral security for their payment; in the
second, the Court decided that where one tenant in common
purchased a life estate in a moiety of the land owned in com-
mon, the life estate was not thereby merged, and the purchase
did not enure to the benefit of the co-tenants; and in the last
case the Court said that an equitable estate does not merge in
the legal estate "if it is necessary for the purpose of justice,
or to carry out the intent of the donor that they should be

kept distinct." Here the intention of the testator, clearly expressed in his will and codicil, was that the plaintiff should be relieved of the rent in arrear at the time of his death, and that from and after his death the church should hold and enjoy the property in fee, for its own use, until "the corporate authorities, official members" or members of the church did any of the things mentioned in the third paragraph of his will.

The leasehold interest of the plaintiff having merged in the estate devised to it by the testator, we must then look to the will in order to ascertain the character of that estate. The estate given was intended to last forever, provided the cor· porate authorities and members of the church continued to observe the conditions mentioned in the will, and upon their failure to do so, it was to pass to those who took under the residuary clause. If, therefore, the limitation over upon the failure of the plaintiff or the members of the church to comply with those conditions, is not, for any reason, void, the plaintiff took a fee in the property, subject to be determined by the happening of the event upon which the limitation was to take effect. A limitation after a fee cannot take effect as a remainder, for a remainder must await the regular determination of the preceding estate on which it rests, and cannot arise in derogation of it, but such a limitation may be good as an executory devise. The reasons for this rule, which is definite and well established, would be interesting to discuss, but it would unnecssarily prolong this opinion to do more than state it, with some of the authorities by which it is fully recognized. 2 *Blackstone,* 164-171; 4 *Kent,* 198-201; 16 *Cyc.* 648-650; 2 *Wash. R. P.,* secs. 972-3; 1 *Jarman on Wills,* 822-825; *Hill* v. *Hill et al.,* 5 G. & J. 87; *Battle Sq. Church* v. *Grant et al.,* 3 Gray, 142. Blackstone (2 *Blackstone,* 172) says that "An executory devise of lands is such a disposition of them by will, that thereby no estate vests at the death of the devisor, but only on some future contingency." It is said in 4 *Kent,* 264, that "An executory devise is a limitation by will of a future contingent interest in lands, contrary to the ·

rules of limitations of contingent estates in conveyances at common law" as "when the devisor parts with his whole estate, but, upon some contingency, qualifies the disposition of it, and limits an estate on that contingency." And Mr. Jarman says: "It will be apparent from what has been stated, that every devise to a person in derogation of, or substitution for, a preceding estate in fee-simple is an executory devise." 1 *Jarman on Wills,* 824. See also *Battle Square Church* v. *Grant, supra;* 2 *Wash. R. P.,* sec. 973; *Biscoe* v. *Biscoe,* 6 G. & J. 202; *Allender* v. *Sussan,* 33 Md. 11. While the law allows the creation of such future interests or estates, they must not, however, be so limited as to offend the rule against perpetuities, and if they are not to vest within the period fixed by that rule they are void. An executory devise, to be good, must take effect upon a contingency or event that *must* happen within the life or lives of those in being and twenty-one years and a fraction of a year thereafter, and if the contingency or event *may not* happen within that time the limitation is bad, notwithstanding the event does in fact occur within the period allowed by the rule. *Biscoe* v. *Biscoe, supra; Graham* v. *Whitridge,* 99 Md. 274. As by the terms of the devise to appellee the estate was intended to last so long as the officials and members of the church continue to observe the conditions in the will, it is obvious that the contingency upon which it is to determine, and the limitation over is to take effect, may not happen within the prescribed time, and that the executory devise to the persons named in residuary clause of the will is, therefore, void. In the case of *Welsh* v. *Foster,* 12 Mass. 93, the Court said: "The estate intended to be conveyed to Welsh was not to take effect, or be vested, 'until the mill pond should cease to be used for the purpose of carrying on two millwheels.' It is apparent that this event, if it should ever happen, might be delayed much beyond the utmost period allowed for the vesting of estates on a future contingency. The rule as to springing and shifting uses is the same which is uniformly applied to executory devises; and the reason of the rule applies equally to all of them,

namely, to prevent the creating of perpetuities or unalienable estates. The event must, in its original limitation, be such that it must either take place, or become impossible to take place, within the space of one or more lives in being, and a little more than twenty-one years afterwards.

"In the case at bar, upon any construction that can be given, consistently with the manifest intent of the parties, it was to create an estate in fee in *Peck,* so long as the mill pond should continue to be used for those purposes, whether that should be a few years, or as many centuries; and afterwards a like estate in *Welsh.*

"It is no answer, to say, that the event which was to vest the estate in *Welsh* might happen, or that it has happened, in a shorter time than what is often allowed under the rule of law before mentioned. It should be such as must happen within such a period. The rights of Welsh must be decided by the deed itself, and the state of facts, as they existed at the time when that deed was made. If we could say that he then acquired a right to the land, to be enjoyed on the happening of the event contemplated, there is nothing to prevent the vesting of the estate according to the deed, although the event should not have happened for a century to come."

The rule is that "where a subsequent condition or limitation is void by reason of it being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised; if for life then it takes effect as a life estate; if in fee, then as a fee-simple absolute." *Battle Square Church* v. *Grant,* 3 Gray, *supra;* 1 *Jarman on Wills,* 826-7; 2 *Blackstone,* 156; *Allender* v. *Sussan, supra; Stansbury* v. *Hubner,* 73 Md. 228.

In the case of *Battle Square Church* v. *Grant,* the devise was to the present deacons of the church, and their successors, of the mansion house of the testator upon the express condition and limitation "that the minister or eldest minister of said church shall constantly reside and dwell in said house, during such time as he is minister of said church; and in

case the same is not improved for this use only, I then declare this bequest to be void and of no force, and order that· said house and land then revert to my estate, and I give the same to my nephew, John Hancock, Esquire, and to his heirs forever." And the Court, after a very full and able discussion of the principles involved and of the authorities by JUDGE BIGELOW, held that the limitation over to John Hancock was too remote and void, and that the deacons of the church, therefore, took an absolute fee-simple title to the property.

In the case at bar the devise to the plaintiff was of the fee in the property, subject to the limitation over in favor of those who took under the residuary clause of the will, in the event the officials or members of the church did the things mentioned in the third paragraph of the will, and as the limitation over is void and cannot take effect, we must hold that the plaintiff took an absolute fee-simple estate in the property.

The only remaining question to be considered is whether under the charter of the appellee a sale of the property is prohibited. Section 302 of Article 23 of the Code of 1904, relating to religious corporations, which is practically the same as section 89 of Article 26 of the Code of 1860, in force at the time the appellee was incorporated, provides that: "The Trustees ·so elected shall have perpetual succession by their name of incorporation, and be capable in law to purchase, take and hold to them and their successors in fee, or for a less estate, any lands, tenements or hereditaments, rents or annuities, goods or chattels within this State, by the gift, bargain, sale or devise of any person, body politic or corporate capable of making the same, and to use or lease, mortgage or sell and convey the same in such manner as they may judge most conducive to the interest of their respective churches, societies or congregations; provided, that nothing herein shall authorize any sale, mortgage or other disposition of any property held by such corporation under any instrument prohibiting such sale." In view of the authority thus conferred upon a religious corporation to sell and convey property held by it,

unless such sale is prohibited by the instrument under which it holds the property, if we are to hold that the property in question cannot be sold by the appellee, it must be because of some clear and positive provision in Mr. Starr's will or in its charter. We have already determined that under the terms of the will the appellee holds an absolute fee-simple estate in the property, and there is, therefore, nothing in the will to prevent a sale.

Nor do we find in the charter any clear injunction against the sale of the property. The incorporators, as indicated by the reference in the charter, were dealing with the leasehold interest or estate in the property about to be conveyed to them by Mr. Starr on certain conditions, and the restrictions in Article 10 had reference to *that estate* and the conditions on which it was to be granted. To hold them applicable to the after-acquired fee in the property would be giving them an effect not contemplated by the framers of the articles of incorporation. Moreover, as the law under which the appellee was incorporated expressly authorizes a sale of the property, if in the judgment of the corporate authorities, it would be conducive to the interest of the church to sell it, any qualification of that right in its charter should be strictly construed, and not be extended by construction, so as to include restrictions not within the plain meaning of the terms employed. That words in a grant or devise indicating the use to which the property is to be applied, do not of themselves create a condition, has been repeatedly held by this Court, without encroaching upon the doctrine announced in *Reed* v. *Stouffer,* 56 Md. 236, cited by the appellant, where the property was conveyed to trustees to be held by them in trust for a certain use. *Newbold* v. *Glenn,* 67 Md. 491; *Kilpatrick* v. *Baltimore City,* 81 Md. 195; *Faith* v. *Bowles,* 86 Md. 18; *Baltimore City* v. *Day,* 89 Md. 555. The same rule should be applied to the construction of a charter, which, it is claimed, qualifies the use and enjoyment of property devised in fee to the extent of taking away a valuable and important right granted by the law which gave it life. Now the charter

provides that the Trustees shall not have the "power to raise money for the completion of the church, nor for any other purpose by mortgage of the property and premises, or to incur any debt for such or any other purpose to bind the property or thereby subject the same to a sale and removal of the restrictions herein provided for." This provision does not in terms include the right to *sell* the property in case it should become necessary to do so in the interest of the church, and the *only* power denied is the power to impose a lien on the property and thereby subject it to a sale for debt. If the incorporators had intended to take away the power to sell the property *under any and all circumstances* they would have said so in plain terms, and in the absence of some clear expression of such intention, it connot be inferred from the language used.

We have examined the evidence in the case and think it justifies the allegations of the bill and the conclusion reached by the Court below "that it would be to the best interest of all the parties interested that the property be sold and the proceeds invested in the purchase of another site and the erection of a church thereon."

It follows from what we have said, that the appellee has the right to sell the property and to invest the proceeds of sale as may be deemed best for the use of the church which was the object of Mr. Starr's bounty, but as all of those interested in its welfare, except the appellant, appear to have acquiesced in the decree of the Court below, we will affirm it, and require the appellee to pay the costs in that Court and the costs of this appeal.

> *Decree affirmed, the appellee to pay the costs in this Court and in the Court below.*