Henry Vincent Hill's Lessee *vs.* Joseph B. Hill, *et al.*
*June*, 1833.

H, by his will made in 1794, devised to his "two daughters, E and T during their single lives, all the remainder of his land; and after their death or marriage, all the land this side of the branch, where I now live, I give to my grand-son O, to him, his heirs and assigns forever—And one negro boy Ralph, *and in case of his death*, to my grand-son V, and in case of his death, to my grand-son I, and in case of his death, to my grand-son B, and in case of his death, to my grand-daughter M." Upon the death of the testator, E and T entered. T married, and E died, when O entered, and continued in possession until his death—Held, that the true construction of this will was, that as O was living at the time of the termination of the estate devised to E and T, he took an absolute estate in fee, and that the limitation over to V failed to take effect.

APPEAL from *Prince George's* County Court.

This was an action of *Ejectment* commenced by the appellant against the appellees, on the 17th day of April, 1830, for an entire interest in several tracts of land lying in *Prince George's* county.

There was a *pro forma* judgment by the county court, upon a case stated, for the defendants, and the plaintiff appealed to the Court of Appeals.

The opinion pronounced by the judge of this court contained the following statement of the facts of the case :

The plaintiff claims title to the land in question, under a devise in the will of *Henry Hill,* dated the 28th March, 1794, which is in these words : "I give and bequeath to my two daughters *Elizabeth Hill* and *Teresa Ann Hill,* during their single lives, all the remainder of my land ; and after their death, or marriage, all the land this side of the branch, where I now live, I give to my grand-son, *Henry Oswald Hill,* to him, his heirs and assigns forever, and one negro boy Ralph, *and in case of his death,* to my grand-son, *Henry Vincent Hill,* and in case of his death, to my grand-son, *John Hill,* and in case of his death, to my grand-son, *Benedict Joseph Hill,* and in case of his death, to my grand-daughter, *Mary Ann Gausa Hill.*" Upon the death of the testator, *Elizabeth* and *Teresa Ann Hill* took possession of the premises. *Teresa Ann* married in the year 1801, which terminated her estate. *Elizabeth Hill* remained unmarried, and continued in possession until her death, which occurred in 1815 ; whereupon *Henry Oswald Hill* entered and continued in possession until August, 1827, when he died intestate, and without heirs of his body, leaving his brother, *Henry Vincent Hill,* (the lessor of the plaintiff,) and other brothers and sisters, who are defendants in the cause, his heirs at law ; having before his death, under the impression that he held an estate tail, conveyed the land to *William E. Kennedy,* and received a reconveyance with a view to dock the supposed estate tail.

The cause was argued before Buchanan, Ch. J., and Martin, Stephen, Archer, and Dorsey, J.

*A. C. Magruder*, for the appellant.

In the devise upon which the plaintiff founds his claim, there are words it is true, which *per se*, would give to *H. O. H.* an absolute fee simple. Other words would give to him, only an estate for life. If the words, "and his heirs or assigns forever," had been omitted; if the devise had been to *H. O. H.*, and in case of his death to the plaintiff in error, to the exclusion of the other brothers and sisters, then only an estate for life would have been given to *H. O. H.*, not only because there were no words of inheritance super-added to the devise, but because the will in express terms would have given him an estate for life. *"In case of his death,"* must then mean *after* his death. The expressions, "to him and his assigns forever," and "in case of his death," to the plaintiff in error, are to be found in the same clause of the will, and are *there* to show the design of the testator in regard to the disposition after his own death, of the same land. Each expression is a part of the will, and each must be qualified, if any construction can be given to the clause, which will give a meaning to each, without violating any settled rule of law. If a fee simple be given to *H. O. H.* because of the words "and his heirs and assigns forever," being added to the devise, then the subsequent clause must be expunged altogether. The estate then would go to *H. O. H.* and his children, if any; if none, to his brothers and sisters equally; when the subsequent words must have been introduced with a design, if *H. O. H.* died having no children, to give it to one brother to the exclusion of the other brothers and their sisters.

It is not contended that the intent of the testator may be gratified, by giving to *H. O. H.* an estate for life, and after his death, whether he leaves children or not, the land shall go to his brother. It is the manifest intent of the testator to give this estate to *H. O. H.* and his children, and descendants, so long as he has any, and the children of *H. O.*

*H.* as well as himself, are in any event to be preferred to the rest of the testator's descendants. Something more is intended than a mere life estate to the first taker, to be determined by his death. But an absolute fee to *H. O. H.*, an estate which, upon his death, intestate, and without children, would descend to all the grand-children of the testator, is forbidden by the subsequent member of the sentence directing in express terms, that the other grand-children shall have no interest in the estate, at least during the life of the plaintiff in error. The will gives to *H. O. H.* an estate in remainder, which vests in him, upon the death of the testator, and which he is to enjoy after the death of the sisters, to whom an estate, while they remained single, was given. This estate is to go to his children, if he has any, and will go to them whether *H. O. H.* die before or after his sisters. The descendants of *H. O. H.* are to be preferred to his brothers and sisters, or any of them, and it would defeat the clear intent of the testator to say, that unless *H. O. H.* outlived his sisters, that his heirs or children to whom the estate is to go after his death, are to be deprived of it altogether.

How then is every member of the devise to be gratified? By giving *H. O. H.* a *fee*, not *absolute*, but to be determined by his death, if he leave no children; and in the latter event, giving to the grand-son next named, (the plaintiff in error) the same estate in the land which had been previously given to *H. O. H.* And when the second grand-son died, if like the first, he died without having had children, then it is to go in like manner, to the third, and so on.

The testator did not mean to leave any part of his property undisposed of. The will shows the manner in which he designed to provide for his numerous descendants. To some of them he gives personal estate. To his two unmarried daughters he gives, in addition to personal estate, the family residence, and all the land around it, so long as they remain single, and no longer. Of the remainder of his estate in that place, he will not allow the law to dispose, because he evidently does not intend that his daughters, or any of their

descendants, shall take it so long as any one of the grand-sons, named *Hill*, shall be alive, or shall leave descendants to take it, in preference to the daughters and their descendants. Even his grand-daughter, named *Hill*, is to be preferred to any married daughter, or the descendants of such daughter. There is to be in no event, a division of his estate among his grand-sons. So long as a grand-child can make title to the land under the will, so long shall such grand-child and his descendants be entitled to it, to the exclusion of every other branch of the family.

The words of the will indicate this to have been the intent of the testator, and such being his intent, there is no rule of law which says it shall not be effectuated. Cases on wills must be in every respect directly in point, and agree in every circumstance, or they will have little or no weight with the court, who look upon the intent of the testator as the polar star to direct them in the construction of wills. 3 *Wilson's Rep.* 141.

This being the case, we can derive from law books but little aid in the argument of this cause.

The cases in *Robinson vs. Robinson*, 1 *Burr. Rep.* 38. *Williamson vs. Daniel*, 12 *Wheat.* 568—and *Smith vs. Ball*, 6 *Peters*, 68, are authorities to show, that the words, "in case the said *H. O. H.* dies," &c. remain a part of the will, and serve to explain and limit and abridge the estate which the previous member of the sentence, *per se*, would have given to him. From the whole sentence, from every word used by the testator, his intention is to be collected. One portion of them, *per se*, would give an absolute fee; the other portion would give only an estate for life. Combine them, and give meaning and effect to all, and they manifest an intent to give *H. O. H.* an estate in fee, to be determined, however, and the same estate to go to the plaintiff in error, in the event of the former dying without having children. 4 *Kent Com.* 9, 10.

It is evident that the testator did not mean that *H. O. H.* should take an absolute estate, which upon his death intes-

tate, was to descend to his heirs generally, and that only in the event of a failure of such heirs, was the second grandson to take.   He could never die without *heirs*, while there lived either of his brothers, to whom, by the devise, the estate was to go in some event or other.   It would be contrary to every known rule to interpolate words in order to create an estate tail, where, by creating such an estate, the declared object of the testator would be frustrated.   Words must be supplied in order to give meaning to all the words used.   "In case he die,"—this must not be construed to mean "whenever he dies," (children or no children)—upon or after his death, without any regard being paid to the words "his heirs and assigns forever,"—and certainly it is not to be supposed, that the testator is here speaking of death as a contingent event, which may, or may not happen. *Cambridge vs. Rous,* 8 *Ves.* 20.   *Lord Douglass vs. Chalmer,* 2 *Ib.* 505.

No words can be introduced which the testator has not used, if the introduction of them would defeat his intention.   We cannot then, introduce after, "in case he dies," the words "without heirs of his body," "leaving no heirs," "having no heirs," because thereby, the subsequent words would be rendered nugatory.   Effect is given to the intent of the testator by the insertion of the words, "in case he should die, having *then* no issue"—"In case he should die without issue, and leaving the person to whom then, if at all, the estate is to go."   If *H. O. H.* died without issue, leaving *H. V. H.* his brother.   *Cro. James,* 590.   An estate in fee, expressly given, cannot be reduced to an estate tail, by words no where to be found in the instrument.

The words here can never be tortured into a limitation, even after an indefinite failure of issue.   The intent, as we contend is, that the plaintiff in error is to take the estate devised to him, *if he takes it at all,* when the first devisee dies, and no words are to be interpolated, which would defeat that intent.

2. It is further contended, that in order to give effect to the intention of the testator, the clause might be construed to give *H. O. H.* an estate for life, with remainder after his death to his *heirs*, thereby meaning his children, and that they would take as purchasers.

3. If the words of the clause taken in connexion do not give *H. O. H.* a determinable fee, then the latter member of the devise forbids him to claim more than an estate for life. "In case he dies," and as he is dead, we are entitled to the estate given to us. The subsequent words must be taken as an indication of a subsequent intention. *5 Ves.* 247.

It may be said, that we cannot claim an estate in fee absolute or determinable, because in the devise to us, there are added no words of inheritance. To us it appears to be clearly the testator's meaning to give to the plaintiff in error when he can claim any interest, the same estate, which in the previous member of the devise was given to *H. O. H.* If in this we are mistaken, and we can claim only an estate for life, still the judgment of the court must be for us. It may be added, that if the estate given to us, be only an estate for life, then no matter what words are introduced after these, "in case he dies," the limitation over, cannot be too remote, although it would seem to depend upon an indefinite failure of issue. *Roe vs. Jeffrey,* 7 *D. and E.* 589. The limitation over must take effect, if at all, before the death of the plaintiff. We insist, that either *H. O. H.* took an estate for life, with a limitation over to his children, if any, as purchasers, or that the devise to him, was a devise of the fee determined by his death, without having had children. If either construction be correct, the judgment must be reversed.

*Taney,* (Att'y Gen'l *U. S.*) for the appellees.

The plaintiff cannot recover, unless *H. O. Hill* either took a life estate, or the limitation over to *H. V. Hill* is good, as an executory devise. And for that purpose it is necessary to interpolate the words, "dying without leaving issue at the time of his death."

In ascertaining the intention of the testator, you are to look to the circumstances as they existed at the time the will was made, and not to future and unanticipated events. The primary intention of the testator was, that his property should descend to the issue of *H. O. Hill,* as long as there should be issue, and not until its failure, was it designed that *H. V. H.* should take. Upon the failure of the issue of *H. O.* he no doubt intended the estate should pass to the plaintiff, but this intention being contrary to the rules of law, cannot be gratified. It is an attempt to limit over a fee, after an indefinite failure of issue, which cannot be done. *Smith vs. Beall,* 6 *Peter's Rep.* 78, 79, 83.

If it was the intention of the testator to give *H. O. Hill* an estate tail general, that estate being by the act of 1786 converted into an estate in fee, there was nothing to limit over; but if there was, the entail is docked by the deeds.

The words used, are "his heirs and assigns for ever," and the use of the word "assigns," shows that he did not mean to limit his estate to his children in succession as purchasers.

It is perfectly apparent from the first member of the devise in question, that the testator intended to give *H. O. Hill* an estate in fee, and a contrary intention, as gathered from the following sentence, is merely conjectural.

The plain intention of a testator is not to be defeated by mere conjecture of a contrary intention. 2 *Fearne,* 427. When the testator says " in case of his death," he meant in case of his death, in his (the testator's) life-time, that being an intention consistent with the declared purpose of the previous clause. *Lord Douglass vs. Chalmer,* 2 *Ves. Jr.* 504, 506. *Cambridge vs. Rous.* 8 *Ib.* 12, 23, 24.

In this case, there is nothing from which we can suppose that the testator designed to reduce to a life estate, what he had, by the most ample words, constituted a fee simple. In construing the second clause of the devise some words must be inserted, and they should be such as do not conflict with the previously expressed intention of the testator. No case can be found, in which the word "heirs" in the

plural, has been held to be a word of purchase, a *fortiori,* the words "heirs and assigns for ever," cannot be so held.

It is said, you cannot interpolate words to reduce an estate in fee, to a fee tail general; but if this be so, you cannot do so, for the purpose of reducing an estate in fee simple absolute, to a conditional fee; and besides, it would require the interpolation of more words, to accomplish the latter purpose, than the former. *Newton vs. Griffith,* 1 *Harr. and Gill,* 111.

Buchanan, Ch. J., delivered the opinion of the court.

This suit is not for an undivided interest, as one of the heirs at law of *Henry Oswald Hill,* but for the entirety, under the limitation to *Henry Vincent Hill,* the lessor of the plaintiff, (in the language of the will,) *in case of the death of Henry Oswald Hill,* the first taker; and the question submitted is, what estate did *Henry Oswald Hill* take, and on what contingency was the limitation over to *Henry Vincent Hill* made to depend? Did *Henry Oswald Hill* take an estate in fee simple absolute; an estate for life, or such an estate as would before the law of descents of this State, have been an estate tail general; or a fee determinable on a contingency; and such as would render the limitation over to *Henry Vincent Hill,* good by way of executory devise?

It has not been contended in argument, that *Henry Oswald Hill* took an estate for life only; the words, "to him and his heirs and assigns for ever," with nothing so to restrict them, preclude such a construction; and they cannot be considered as revoked by any subsequent repugnant words, to be found in the devise. If he took a fee simple absolute, the limitation over was, upon acknowledged principles, clearly void, either as a remainder, or by way of executory devise, and nothing passed by it to *Henry Vincent Hill* as devisee, who could only take an undivided interest, as one of his heirs at law; and so, if he could be construed to have taken, what would have been an estate tail general, before the act to direct descents, such an es-

tate, being by that act converted into a fee simple. *Newton vs. Griffith*, 1 *Harr. and Gill*, 111. But even if it were not so, and the limitation over could have operated as a contingent remainder, expectant upon the precedent particular estate tail, though not as an executory devise, the contingency on which it would have been made to depend, (an indefinite failure of issue) being too remote, yet that remainder would have been defeated by the deed, from *Henry Oswald Hill* to *William L. Kennedy*, and the reconveyance to him, by which the supposed estate tail, on which it depended, would have been destroyed.

But an estate in fee simple being expressly given by the first clause of the devise, it cannot be reduced to an estate tail, by the interpolation of words no where to be found in the will; and if it could, it would be of no avail for the purpose of setting up a remainder, expectant upon such an estate tail, since by the law of descents of this State, what would before have been estates tail general, are converted into estates in fee simple; and seeing too, that if it were otherwise, and this could be construed into a devise of an estate tail to *Henry Oswald Hill,* that estate tail, and the remainder limited upon it, were both destroyed by his deed to *William L. Kennedy,* and the re-conveyance to him.

Is this then a devise of an estate in fee simple, determinable on any, and what contingency, upon the happening of which it was the intention of the testator, that the limitation over to *Henry Vincent Hill* should depend?

That there was some contingency in the mind of the testator seems manifest. The expression, "in case of," not meaning "at," or "upon," but having the same signification with the word "if." To construe it therefore, as referring to the death of *Henry Oswald Hill* generally, and meaning *upon his death,* or *whenever it might happen,* would be to reject the contingent or conditional words, and to introduce words of an absolute signification, which can only be done, where it is necessary to give effect to the obvious intent, which is not the case here; but on the contrary,

would have the effect to defeat the intention of the testator; as such limitation over would be void, either as a contingent remainder, or an executory devise. And as it cannot be supposed, that he meant to speak of the death alone of *Henry Oswald Hill*, (a thing certain) as a contingent event that might or might not happen, we are put to inquire, what the contemplated contingency was.

It could not have been a dying without heirs generally, as the persons selected as devisees over, and who could only take as such after his death, are themselves his heirs, and could never have taken at all under the devise; since, so long as they lived, the contingency upon which alone the limitations over to them were to take effect, (that is, the death of *Henry Oswald Hill* without heirs,) could not happen. But if that was the contingency intended, and had been so expressed, and the immediate limitation over had been to a person who could not have been an heir of *Henry Oswald Hill*, it could not have taken effect. It would have been void as a contingent remainder, being after a fee simple; and could not have operated by way of executory devise, the event (the dying of *Henry Oswald Hill* without heirs) being a contingency too remote to support it. If the contingency intended, was the dying of *Henry Oswald Hill* without issue, children or heirs of his body generally, it would be nugatory; since, where an estate in fee simple is expressly given, it cannot be converted into an estate in tail, by the introduction of words not to be found in the will. And if that intention had been expressed, the limitation over could not have been carried into effect. Not as an executory devise, which cannot be limited upon an indefinite failure of issue, as that would be; nor as a contingent remainder expectant upon an estate tail, under the operation of the law of descents of this State, making what would before have been an estate tail general, an estate in fee simple.

But it has been urged in argument, that as the testator could not have meant the death of *Henry Oswald Hill*,

without heirs generally, seeing that he could not die without heirs, so long as either of the devisees over, or the issue of any of them should be alive ; and as by the words, " his heirs and assigns for ever," he intended that he should take more than an estate for life, he must have designed to provide for his children ; and meant to give him an estate in fee, determinable on his dying without *children*, or *issue of his body living at the time of his death;* and that the devise must be construed, and the same effect given to it, as if immediately after the words, " in case of his death," the words, "*without children, or issue of his body living at the time of his death*," had been added. That may have been his intention ; but if it were, *quod voluit, non dixit.* It is true, the intent of the testator, when it can be ascertained from the whole context of the will, is to prevail, if consistently with the rules of law, it can. But that intent, if not directly expressed, must plainly and clearly appear ; it should be an intent plainly to be gathered from the whole will, and clearly showing the sense, in which expressions, otherwise doubtful, were meant to be used, and to what they were intended to be applied. And when the meaning of the terms used, the sense in which the testator used them, is plainly seen, the omission of express words of a corresponding meaning may be supplied ; which is to give effect to the plain intention of the testator gathered from the whole will, by means of the terms used. If we were to fish for the intention of this testator, we might suppose that he meant *the death of Henry Oswald Hill, without issue of his body, living at the time of his death*, in order to give effect to the limitation over, by way of executory devise ; on the ground that he must have intended to make provision for the children of *Henry Oswald Hill*, if he should have any. But, can we find that to have been the clear and plain intention of the testator ; the necessary sense (to be gathered from the whole will) in which, the terms employed were used ? If we cannot, to introduce the words, " *without issue of his body living at the time of h* ;

*death,*" (although perchance, it might correspond with his intention) would be, not to expound his will, but to make one for him. Guessing, though we might happen to guess right, will not do. If there was no event or period to which the words, " in case of his death," could be applied, as *words of contingency,* perhaps it would be most consonant to the rules of construction, and more safe to reject them altogether, as ambiguous, senseless and incapable of being carried into effect, than to introduce the words of contingency proposed. Without ascribing to the testator something of technical learning, a knowledge of the difference between a *definite* and an *indefinite* failure of issue;" and the effect and operation of a limitation over upon one, or the other, we have no means of determining which contingency he intended, if either. He may have meant the death of *Henry Oswald Hill,* without issue of his body living at the time of his death, or, if he intended either, he may have meant without issue of his body generally, which would seem to be the most natural to an unskilful man, not knowing the necessity of confining it to the failure of issue, at the time of the death of the first taker, in order to give effect to the limitation over, or he may have meant neither. And if there was any other contingency that might have been in the mind of the testator, to which the terms used aptly refer, as it is to be presumed that he understood what he said, and meant what his words most nearly and naturally import, in the place where they are found, and in relation to the subject to which they are applied, in the absence of any thing expressed, to explain them, and clearly showing a different intention, that should be taken to be the contingency contemplated ; instead of searching through the will for the intention, and when supposed to be discoved from the context, and not from the expressions employed, introducing words expressive of what the terms used do not import. And surely the words here used, (" in case of his death,") cannot of themselves, by any construction mean, *a dying by the devisee without issue of his body*

*living at the time of his death;* though they may refer to the contingency of his being dead, at the period of the termination of the precedent estate, given to *Elizabeth* and *Teresa Ann Hill.* And if it may have been the intention of the testator, to give to *Henry Oswald Hill* an estate in fee simple absolute, if he should be living, or in the event of his being alive at that time, when he contemplated the vesting of the estate under the limitation over to him, and the expressions used are such, as, standing alone and unexplained, indicate that intention, his death at that period must be taken to have been the contingency in the mind of the testator, unless there is something manifesting that he looked to a different contingency. What is there then to show that such could not have been, or was not his intention, and that he must have had some other contingency in his mind? It is not, we think, to be found in the supposition, that he must have intended to provide for the children of *Henry Oswald Hill,* or because no reason is shown why they should not have been provided for. It does not appear that he had any children at that time, and the presumption is, that he had none, as he left no issue at the time of his death, and therefore the attention of the testator may not have been drawn to the contingency of his having children.

But if he had, it does not follow that they must have been the dearest objects of the testator's benevolence. They would have been his great grand-children, and he may well have preferred his grand-children, the immediate devisees over in succession. It was a matter resting in feeling, and he certainly had his preferences; and when he intended to give an estate in absolute fee, he knew how to do it. He had previously, in another clause of his will, given such an estate to another grand-son, *Henry Hill,* in his own language, " to him, his heirs, and assigns for ever," with no precedent life estate, but to vest immediately upon his own death.

It is clear too, that he preferred his grand-son *Henry Os-wald Hill*, to other grand children, to whom there are limitations over of the land devised to him, and the circumstance, that the devise to him was after a precedent life es-state to *Elizabeth* and *Teresa Ann Hill*, whom he might not survive, may perhaps account for the introduction of the words of contingency, "and in case of his death," and the consequent limitations over to *Henry Vincent Hill, &c.* as the next objects of his bounty, in preference to any children that *Henry Oswald Hill* might have. But the devise to him being in the first instance, in the same words with the devise to *Henry Hill* of other lands, (" to him, his heirs, and assigns for ever,") it would seem as if he intended to give to him the same estate, (an absolute fee) in the event of his being alive to take it, on the termination of the precedent life estate; and if not, then that it should go over; and under that construction, if *Henry Oswald Hill* had died before the termination of the preceding life estate, the limitations over would have had the same operation, as if they had taken effect by way of executory devise.

If instead of the words, " and in case of his death," the language of the testator had been, " if he be dead," or, " if he should be dead," it would in the absence of any thing to explain it, and to show that it referred to some other contingency, obviously have referred to the contingency of *Henry Oswald Hill's* death, at the termination of the preceding life estate. It would have been equivalent to his having said, " and if he should then be dead," that is, at the termination of the precedent estate. And the words, " and in case of his death," viewed in connexion with the preceding devise of an estate for life, upon the termination of which the devise to *Henry Oswald Hill* was to take effect, are synonymous terms; and standing where they do, and applied to the subject in relation to which they are used, the time at which the devise to *Henry Oswald Hill* was to take effect, marks the period to which they refer; nothing appearing to explain them, or to show that they

point to a different contingency. And as the language of the testator imports only, what *may* have been his intention, there being nothing evincing a different intention, he must be understood to have meant what his language most nearly imports.

We think, therefore, that as *Henry Oswald Hill* was living at the time of the termination of the estate devised to *Elizabeth* and *Teresa Ann Hill*, he took an absolute estate in fee, and that the limitation over to *Henry Vincent Hill* failed to take effect.

JUDGMENT AFFIRMED.