VIRGINIA PEGRAM McINTOSH et al. *v.* CHARLES E. RIEMAN et al., Trustees, et al.

[No. 97, October Term, 1930.]

*Decided January 16th, 1931.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Carlyle Barton*, for the appellants.

*George Weems Williams,* with whom was *William L. Marbury, Jr.,* on the brief, for M. Isabel Thom and others, appellees.

*Joseph C. France,* with whom was *D. G. McIntosh, Jr.,* on the brief, for the trustees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the trustees named in the will of Joseph H. Rieman for a construction of the will. All parties in interest, *in esse,* were made defendants. The question is: Did the trust created by the testator for his five children terminate as to the share of Perlee Lowe Rieman, one of the children, upon his death intestate and without issue; or does it continue until the death of the last surviving child? The trial court held that the trust ceased as to the share of Perlee at his death, and that the corpus of the share should be immediately distributed to the surviving children of the testator. This appeal is from a decree directing such distribution; and is taken in behalf of the infant defendants. We concur in the conclusion of the trial court.

In the seventh item of his will the testator devised and bequeathed the rest and residue of his estate to trustees upon the following trusts:

"A.  In trust to suffer and permit my beloved wife to occupy my 'Country Seat' and my City residence as a home, for herself and our children, in summer and in winter, so long as she may live or remain my widow, (when I say my wife may occupy my 'Country Seat' I intend that the garden, gardener's house, lawns, stable and other things, immediately connected therewith, as now used by us, shall go with and be considered as parts of her summer residence) free of rent and free of taxes, insurance, and expenses for repairs.  And in further trust as to one-third part of the net annual income of and from my 'trust estate' (in addition to the use and occupancy of my City residence and 'Country Seat') for the sole and separate use and benefit of my said wife, for and during the term of her natural life, to be paid over half yearly, accounting the same from my death, and I declare, and say that the provisions I herein make for her, shall be in lieu of dower in my real estate, and her distributive share in my personal property.  And in further trust as to the rest or balance of my 'trust estate' (including therein and therewith my 'City Residence' and my 'Country Seat' after the death or marriage of my said wife, whichever shall first occur; as also including therewith the net annual income from my 'trust estate' given her, after her death, but not before) for the use and benefit of my five children now living, to wit, Perlee Lowe Rieman, Mary Isabel Thom, Carlton Alexander Rieman, Charles Elet Rieman and Charlotte Lowe Rieman, and any others, that may hereafter be borne to me, share and share alike, and to the survivors and survivor of them, and upon the death of the survivor, then for the use and benefit of and unto such persons or person, as may at that time, be my right heirs, share and share alike, *per stirpes* and not *per capita*.

"B.  Provided, however, that if any or every of my children, shall die, leaving issue of his or her body, living at the time of his or her death, then and in that event, shall the part or share of him or her so dying,

of or in my 'trust estate' not pass or belong to my surviving children, child or my right heirs, as above provided for, but shall go to and become the absolute property of such issue, share and share alike, *per stirpes* and not *per capita*."

The question here presented arises under paragraph A of Item 7. It is contended, in effect, by appellants, that the words, "to the survivors and survivor of them," referring to the income from the trust estate, created an equitable joint tenancy in the undivided income among the five children. That argument would have much force if the single paragraph were to be considered. But when the whole will is read together it becomes apparent that testator did not contemplate that the trust property should be administered as a whole, and that the income therefrom should be divided into five parts. By item 9 he directs his trustees, as soon as practicable after administration in the orphans' court:

"* * * to make an equal partition of my personal estate (not including my real or leasehold property) among the *cestui que trusts* into as many parts as there are persons to take under this my will, and when such partition shall have been made, to pay, transfer and deliver unto each of my sons, Carlton Alexander, and Charles Elet, if they be living, then, one-half of each of their shares, in said personal estate so partitioned and as they may severally arrive at the age of thirty years, the other half thereof; and as they shall severally receive their respective shares thereof, my trustees shall charge them severally therewith, and when so charged, shall be taken into consideration in making the final division of the rest and residue of my estate hereunder; and my said trustees shall hold the other shares of my said personal estate, so partitioned for the *cestui que trusts,* under my will."

And in item 11 he directs:

"* * * That all sums of money that may at the time of my death, stand charged to any of my children on

my books, shall be taken and considered as an advancement to said child or children, and shall with the interest thereon at the rate of three per centum per annum from the time of my death be deducted from his or her share of my 'trust estate' at the final division of the same among the *cestui que trust,* which division shall not, however, take place, nor shall there be any partition made of my 'trust estate' except as hereinbefore provided amongst the *cestui que trust,* before the year nineteen hundred (A. D. 1900). It being my will that all of my trust property shall be kept together as one estate, until the expiration of the present century, except, however, in so far as it may be necessary to do otherwise in the execution of the trusts, I have hereby conferred upon my trustees.

"And I hereby authorize and empower my trustees in the year nineteen hundred to make a just and fair division and partition of my 'trust estate' amongst my *cestui que trust.* Should, however, a full division and partition of my entire 'trust estate' be at that time, in the opinion of my trustees, impracticable or unwise by reason of certain parts thereof or properties belonging thereto being of greater value than proper for any one child to take, then shall my trustees have the right and the power is hereby given to them to keep the same as trust property or to sell and convey such properties for the purposes of partition, and to divide the proceeds amongst the *cestui que trust.* If, however, the time of making the division and partition as I have authorized, should in the judgment of those authorized to make the partition, be an inopportune season or time for selling the property, they may, if they shall see proper, postpone the further partition and shall keep these properties in trust, until a more favorable opportunity for selling shall present itself, so that my trustees shall own and hold my trust estate after the partition shall have been made as before; except in so far as the same may have been affected by division into parts instead of whole."

It seems obvious from the foregoing provisions that it was the intention of the testator that his entire trust estate (other than the personal property, which was to be divided at once), as soon as practicable after the year 1900, should be divided into five equal parts and one part held for each of his children, thus destroying the unity of interest without which a joint tenancy cannot exist. There is no gift over of the entire trust property.

Even where the gift in remainder is in terms of the whole fund, if a tenancy in common is more consistent with the general context of the will, it should be so construed; and there should not be a postponement of the distribution of every part until the death of the surviving tenant for life, unless an intention so to do is clearly indicated. *Jarman on Wills,* (5th Am. Ed.), vol. 3, p. 16. Especially is this so in view of section 13 of article 50 of the Code: "No deed, devise or other instrument of writing shall be construed to create an estate in joint tenancy, unless in such deed, devise or other instrument of writing it is expressly provided that the property thereby conveyed is to be held in joint tenancy." See also *Henderson v. Henderson,* 64 Md. 185, 1 A. 72; *Preston v. Clabaugh,* 90 Md. 707, 45 A. 887.

If we had any doubt as to the proper construction of the will, it would be removed by paragraph B of item 7, in which there is an interpretation by the testator himself of what he meant in paragraph A of said item by "survivors and survivor of them, and upon the death of the survivor." He says, in effect, those words mean "surviving children," with reference to the death of each of the first three to die; and "surviving child," with reference to the death of the fourth.

"In ascertaining the intention of a testator, courts must consider all the circumstances properly before them, and must not place such construction upon the provisions of the will as will do injustice to any of the parties, or would be contrary to what a reasonable man would likely intend, unless the terms of the will be so clear as to admit of no doubt as to what the testator did intend." These words from the

·opinion of the court, written by Judge Boyd, in *Wethered v. Safe Deposit Co.*, 79 Md. 153, 28 A. 812, 813, are appropriate to the facts of the present case as they are disclosed by the record, and as they were known or could reasonably have been foreseen by the testator. It is significant that appellants and appellees agree that the decision of the chancellor was in accord with the best interests of all parties.

*Decree affirmed, costs to be paid out of the corpus to be distributed.*

PARKE, J., filed a dissenting opinion as follows:

In my opinion, the court has achieved a construction which results in a defeat of the testator's intention. While it is axiomatic that the testamentary purpose is to be derived from the four corners of the will in the light of the circumstances under which the instrument is written, the application of this rule of construction does not disregard the relative importance of the several parts of the whole document. So, while the ninth and eleventh items must be considered in the ascertainment of the testator's intention, their scope was administrative, and their operation dependent upon the existence of the bequests and devises of the seventh item of the will. So, if a clear expression of the testamentary intention be found in the primary seventh item, this intention would normally not be modified by expressions, unless clearly controlling, of the subsidiary ninth and eleventh items. The opinion of the majority of the court rests largely upon the argument that these last named items indicate that a joint tenancy was not created by the words of survivorship, and that the partition and division in kind provided for in these items with respect to the realty and personalty given in trust is conclusive that a tenancy in common was created.

As stated, the partition and division were administrative matters to take place at the times and in the manner specified, in the course of the trust previously created. The provisions of these two items were not repugnant to the gifts of the

seventh item, because the portions relating to the division of the personal property and the partition of the real estate expressly declare the trustees shall continue to hold the partitioned realty and divided personalty as theretofore, except in so far as the corpus of the trust may be affected by its separation into these parts instead of remaining an undivided unit. Whether the children took at the death of the testator their equitable interests as joint tenants or as tenants in common is immaterial, since the will contemplated the destruction of any simultaneous partial life interests in the whole of the equitable trust estate by its division and partition into as many equal shares as there were surviving children, and the allocation of a share to every one of such children. After these allotments, the legal estate remained in the trustees, but every one of the surviving children had a separate equitable interest in his respective distinct part of the corpus, and so, unity of possession in the whole equitable estate being thus destroyed by severance, any prior equitable co-ownership, whether an equitable interest in joint tenancy or in common, was at an end. *Tiffany on Real Property* (2nd Ed.), sec. 192, p. 643. Even if the precedent equitable interest were one in common, the benefit of a survivorship might exist, because, as stated in *Jarman on Wills*: "And Bayley, J., observed with great truth, 'A tenancy in common, with benefit of survivorship, is a case which may exist without being a joint tenancy, because survivorship is not only characteristic of a joint tenancy.'" 2 *Jarman on Wills* (6th Ed.) 1561, 1562 (star); *Doe d. Barwell v. Abey,* 1 M. & S. 428, 105 Eng. Reprint 160; *Taafe v. Conmee,* 10 H. L. Case. 78. Moreover, it is not perceived how any question of either a joint tenancy or a tenancy in common arises with respect to the equitable interests of the five children in the trust estate, since, accurately speaking, they are not cotenants nor joint tenants, but members for life of a closed, though diminishing, class, with the benefit of survivorship in the whole of the trust estate, in which their several interests are defeasible only to the extent of the part of any member in the corpus, upon the contingency of his dying leaving issue surviving

him. *Tiffany on Real Property* (2nd Ed.), sec. 204, pp. 716-718.

It is therefore submitted that the separation of the corpus into as many parts as there were surviving children was for the purpose of equalization and of the more convenient management of the trust, and that there is nothing to be found in the wording of the ninth and eleventh items that would show a testamentary intention in any way different from that expressed in the seventh item. By this seventh item all the residuary real and personal property is devised and bequeathed to trustees to have and to hold, after the death of the widow, for the use and benefit of five named children, and any others who might be borne to the testator, share and share alike, and to the survivors and survivor of them, and, upon the death of the survivor, then for the use and benefit of and unto such persons or person as may at that time be testator's right heirs, share and share alike, *per stirpes* and not *per capita,* provided, however, that if any or every of said children shall die leaving issue of his or her body, then and in that event shall the part or share of him or her so dying of or in the trust estate not pass or belong to the surviving children, child, or testator's right heirs, as above provided for, but shall go to and become the absolute property of such issue, share and share alike, *per stirpes* and not *per capita.*

Difference of opinion may arise with reference to the wisdom of this disposition; and the *cestui que trust* now in being may prefer, because of interest, another view, but it is clear to the author of this dissent that the testator, in obedience to a natural and common sentiment among men, desired to provide a trust until the last of his children should die, and to assure his estate going to his own blood, by directing that, upon the death of every child, the share of the one so dying should be discharged of the trust and pass to the child's issue, and, in default of such issue, in trust to the testator's surviving children or child for life, and, after the death of the last surviving child, the trust to end and the estate to pass to such child's issue, *per stirpes* and not *per capita,* and, in default of such issue, then to the heirs of the testator, *per stirpes*

and not *per capita.* In order to effectuate this prevailing testamentary intention, the residue of the entire estate was bequeathed and devised to trustees in trust for the use and benefit of the five children of the testator, for their joint lives and those of the survivors and of the survivor of them, and, at the death of such survivor, then, with all accruals, to the testator's right heirs, *per stirpes* and not *per capita,* defeasible, however, as to the share of any or every child of the testator, upon the happening of the contingency of such child dying leaving issue, by an executory limitation over of such share, discharged of the trust, to the issue of such child so dying. *Hill v. Safe Deposit & Trust Co.,* 101 Md. 60, 66, 60 A. 446; *Anderson v. Brown,* 84 Md. 261, 35 A. 937; *Wilson v. Bull,* 97 Md. 128, 135, 54 A. 629; *Merowitz v. Whitby,* 138 Md. 222, 113 A. 651; *Iglehart v. Hall,* 140 Md. 293, 304, 305, 117 A. 889; *Ridgely v. Ridgely,* 147 Md. 419, 422, 423, 128 A. 131; *Miller's Construction of Wills,* sec. 276, p. 780; *Tiffany on Real Property* (2nd Ed.), secs. 144, 103, 169-171.

By this construction of the will the share of Perlee L. Rieman, a child of the testator who has died without issue, would not vest in his four surviving sisters and brothers absolutely and in fee simple, discharged of the trust, but would remain as part of the corpus of the trust for devolution as prescribed by the terms of the will.