BERNADINE BOYD *v.* WILLIAM D. BOYD

[No. 412, September Term, 1974.]

*Decided February 14, 1975.*

498

The cause was argued before Orth, C. J., and Thompson and Menchine, JJ.

*Norman Hochberg*, with whom were *Paul J. Bailey*, *Paul, Perry & Hochberg* and *John S. Hyle* on the brief, for appellant.

Submitted on brief by *Walter B. Dorsey* for appellee.

ORTH, C. J., delivered the opinion of the Court. MENCHINE, J., concurs in part and dissents in part and filed an opinion concurring in part and dissenting in part at page 512 *infra*. THOMPSON, J., dissents and filed a dissenting opinion at page 513 *infra*.

The seeds from which the controversy culminating in this appeal grew were sowed on 4 September 1924 when Mary E. Davis (testatrix) executed a will which was her last will and testament upon her death in 1928 during the month of June.[1] After provisions for the payment of her just debts, funeral charges and a legacy of $300, she gave, devised, and bequeathed all the property of which she may die seised and possessed to her husband, Frederick C. Davis, for his use during his single life, and after his death or remarriage, to her daughter, Mary Pearl Boyd, during her natural life. She disposed of the remainder interest in her property in three succeeding paragraphs, which, for ease of reference, we designate as clause 1, clause 2, and clause 3.

Clause 1:

"And after the death of my said daughter, then said Estate including Real, personal and mixed to my two grandchildren, George Frederick Boyd and William Dunbar Boyd, absolute and in fee simple to do with as they may see fit and proper provided however that said estate shall not pass unto said grandchildren until they shall arrive at the age of twenty one years, share and share alike, but the income to be paid to their legal guardian during

---

1. The will was received in evidence at the trial below. According to a stipulation filed in open court, it is recorded among the records of the Register of Wills for Saint Mary's County in Liber M.L.C. No. 1, folio 59. The stipulation indicates it was admitted to probate.

their minority for their education and main-tenance."

Clause 2:

"And it is my Will that in the event of the death of either of my grandchildren then such share shall go absolutely to the other."

Clause 3:

"And in the event both my grandchildren should die before arriving at the age of twenty one years, then I give bequeath and devise all said property so mentioned to St. Joseph Roman Catholic Church at Morganza, Maryland absolutely but not until all the Covenants and conditions heretofore mentioned have taken place." [2]

Although the will speaks in terms of all of the testatrix's property, we are concerned here only with certain real property of which she died seised and possessed, namely, a 190 acre farm located in the 4th Election District of Saint Mary's County which was conveyed to her, her heirs and assigns, forever in fee simple by a deed from one Mary E. Hayden dated 27 November 1895 and recorded among the Land Records of said County in Liber J.J.G. No. 3, folio 269.

As we have indicated, the last life tenant died in 1967 and one of the remaindermen, George Frederick Boyd, died in 1968.[3] Questions as to the disposition of the property under

2. The testatrix was over 60 years of age when she died. At that time, her daughter was about 35 years old, and her two grandsons, George Frederick Boyd and William Dunbar Boyd, were 15 years of age and 6 years of age, respectively. Her daughter died on 29 October 1967. George Frederick Boyd died on 9 March 1968. These facts are from the stipulation filed at the trial. Included in the statement of facts in appellant's brief are that the testatrix's husband died 24 September 1928, that George Frederick Boyd was born 31 April 1913, and that William Dunbar Boyd was born 21 August 1923. Appellee, in his brief, said that appellant's statement of facts was "substantially correct" and offered no changes or additions.

3. George Frederick Boyd left surviving a widow, Bernadine Boyd, and two childrer, George Frederick Boyd, Jr. and Bernadine Johnson. Bernadine Boyd testified that her husband died testate, that his will had been duly probated, and that under it she received all his property.

the will, however, did not ripen into legal action until 19 December 1973.[4] On that date William Dunbar Boyd (appellee) instituted a declaratory judgment action in the Circuit Court for Saint Mary's County against Bernadine Boyd (appellant), George Frederick Boyd, Jr. and Bernadine Johnson.[5] The narratio, as orally amended at trial, asked that the court construe the will and declare the rights and respective interests of the parties thereunder. It was appellee's view that the will created a joint estate in the property in the two grandsons, or in the alternative, "a tenancy in common with a right of survivorship" so that on the death of George Frederick Boyd the entire estate passed to appellee. Appellant claimed that the will created an estate in common as to the grandsons so that she was entitled to one-half of the estate under the will of her husband which devised and bequeathed all of his property to her.

The chancellor, considering that the only question before him was "with respect to the devise in question: namely, does it create a right of survivorship between the two grandsons of the testatrix", construed the will as creating "a tenancy in common with William Dunbar Boyd and George Frederick Boyd, with right of survivorship." He adjudged that because George Frederick Boyd was "now deceased, title to the entire property . . . is now vested absolute in fee simple in William Dunbar Boyd, and the Defendant, Bernadine Boyd, is denied any interest in said property." A decree to such effect was entered on 7 June 1974. The appeal is from that decree.

Appellee bases his claim that he holds an absolute estate

4. Bernadine Boyd testified to the effect that neither grandson lived on the property after the death of their mother but that they shared the income derived from it. On the death of George Frederick Boyd, appellant asked appellee what he wanted to do with the property. He said: "Well, it is half yours and half mine, and we'll continue to work it as is, if George Frederick Junior will do so." Apparently appellee received one-third of the income, appellant one-third and George Frederick Boyd, Jr. one-third, with taxes and repairs paid out of the latter two-thirds. What disrupted this arrangement is not apparent from the record.

5. George Frederick Boyd, Jr. and Bernadine Johnson demurred and were deleted as parties at the start of the trial upon motion of appellee. It was agreed that they were not proper parties ". . . in that any interest George F. Boyd may have had passed to his wife by his will."

in fee simple in the whole of the property on three alternative grounds — that the will created a joint tenancy in him and his brother, or that it created a tenancy in common in them "with a right of survivorship", or that, in any event, the testatrix intended that a fee simple estate ultimately vest in the survivor of him and his brother.

The ascertainment and effectuation of the intention of the testator is controlling in the construction of wills. Recognition of this fundamental axiom as the "guiding star" of testamentary construction has been apparent in countless decisions. The axiom has been stated in a variety of ways. 57 Am. Jur. *Wills* § 1133. Our Court of Appeals has said: "The general principle in the construction of wills is that all parts of a will are to be construed in relation to each other, so as, if possible, to form one consistent whole. The cardinal policy is to carry out the intention of the testator as deduced from the four corners of the will." *Veditz v. Athey*, 239 Md. 435, 448, and cases cited therein. "The primary object in construing a will is to ascertain the intention of the testator from the whole instrument, or from the instrument as read in the light of surrounding circumstances and then to give effect to that intention if it be consistent with the rules and policies of the law. What a testator meant must be gathered from what he said in the will, as viewed from the standpoint he occupied at the time of its execution. *Miller, Construction of Wills*, secs. 8, 9. And all 'the clauses and every word in a will should receive such a construction as that, while effect is given to each, they are all made to harmonize with each other, so as to reach the general plan or scope of the entire will.' *Miller, op. cit.*, sec. 11." *McIntyre v. Byrne*, 217 Md. 71, 77.

We reject the notion that the testatrix intended to create a joint tenancy in her two grandsons.[6] In ascertaining the intention of the testatrix in this connection we consider the statutory mandate that joint tenancies must be created by express provision.[7] *Brewer v. Bowersox*, 92 Md. 567.

6. For a history of joint tenancy see *Crowe v. Houseworth*, 19 Md. App. 688.

7. For more than a century and a half, Maryland, by legislative enactment, has looked with disfavor upon an estate in joint tenancy. Acts

Although the statutory requirement is only one of clear manifestation or intention, and not one of particular words, the paramount factor of the intention of the grantor must be so clearly expressed as to leave no doubt of the intention to create a joint tenancy. *Alexander v. Boyer*, 253 Md. 511; *Register of Wills v. Madine*, 242 Md. 437; *Marshall v. Security Storage & Trust Co.*, 155 Md. 649; *Michael v. Lucas*, 152 Md. 512. There was no such clear expression of intention to create a joint tenancy here. On the contrary, clause 1 manifests an intention to create a tenancy in common. "In wills the expressions, 'equally to be divided,' 'share and share alike,' 'respectively between and amongst them,' have been held to create a tenancy in common. *2 Bl. Comm. ch. 12, note by Chitty*, and in *2 Powell on Devises, ch. 18, pages 370, 371*, it is said: 'It may be stated generally that all expressions importing division by equal or unequal shares, or referring to the devisees as owners of respective or distinct interests, and even words simply denoting

---

1822, ch. 162, inverted the common law rule favoring joint tenancies by providing:

"That no deed devise or other instrument of writing which may hereafter be made or executed, shall be construed to create an estate in joint tenancy, unless in such deed, devise, or other instrument of writing, it is expressly provided that the property conveyed by such deed, devise, or other instrument of writing to be held in joint tenancy."

The Act appeared in the 1957 Code, Art. 50, § 9, in this language:

"No deed, devise or other instrument of writing shall be construed to create an estate in joint tenancy, unless in such deed, devise or other instrument of writing it is expressly provided that the property hereby conveyed is to be held in joint tenancy."

Art. 50, § 9 was repealed by Acts 1972, ch. 349, effective 1 January 1973. The Act also repealed Art. 21, §§ 1 to 150 inclusive, and enacted in their place a new Article 21. Section 5-117 of the new Article 21 was identical with the former Art. 50, § 9 except that "will" was used in place of "devise." In the revision of the Code, Art. 21 was in turn repealed by Acts 1974, ch. 12, § 1, effective 1 July 1974 and the Real Property Article enacted by § 2 of the Act, generally effective the same date. Real Property Art. § 2-117 reads:

"No deed, will, or other written instrument which affects land or personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy."

The Revisor noted that the only changes from Art. 21, § 5-117 were in style.

equality, will have this effect.' " *Gilpin v. Hollingsworth*, 3 Md. 190, 195. After the death of the second life tenant, the devise in clause 1 is to the two grandsons "absolute and in fee simple to do with as they may see fit and proper . . . share and share alike." Beyond doubt, this provision, standing alone, gives the property to the devisees as tenants in common. Neither clause 2 nor clause 3 derogates from the creation of a tenancy in common. It is true that clause 2 speaks to survivorship and that survivorship is the chief incident of joint tenancy. *Michael v. Lucas, supra*, at 514.[8] But as is pointed out *infra*, clause 2, when the general plan or scope of the entire will is considered, does not demonstrate *any* intention to create a joint tenancy much less such a clear intention as to leave no doubt. Clause 3 patently expresses no implication of joint tenancy. In short, a tenancy in common as to the grandsons is more consistent with the general context of the will than a joint tenancy, and the devise to them should be so considered, especially in the light of the statutory mandate. *McIntosh v. Rieman*, 160 Md. 368, 373.

We also reject the theory that the devise to the grandsons creates "a tenancy in common with a right of survivorship." In support of this conception, appellee relies upon *Mitchell v. Frederick*, 166 Md. 42, in which the Court of Appeals apparently recognized such a cotenancy. Whatever the actual holding in *Mitchell* may be, see Annot., 92 A.L.R. 1420 and Annot., 1 A.L.R. 2d, 247, *but see East. Shore v. Bank of Somerset*, 253 Md. 525, 532, and *Schilbach v. Schilbach*, 171

---

8. "The estate of joint tenancy, with its right of survivorship or *jus accrescendi*, was well known at common law and during the time of feudalism, because of the vital importance of tenure, was a favored estate." *Alexander v. Boyer, supra*, at 517. At the common law joint tenants were seised *pur my et pur tout*, that is, although each joint tenant was seised of the whole, as between the joint tenants, each had an undivided interest as an individual which was equal to the interest of every other cotenant. Freeman, *Joint Tenancy and Partition*, § 12 (2d ed. 1886) quoting 2 Bl. Comm. 184, puts it thus: "But the grand incident of joint estates is the doctrine of survivorship, 'by which when two or more persons are seised of a joint estate, for their own lives, or *pur autre vie*, . . . the entire tenancy upon the decease of any of them remains to the survivors, and at length to the last survivor; and he shall be entitled to the whole estate, whatever it may be.' "

Md. 405, 407-408, *Mitchell* is simply not apposite.[9] It did not concern a testamentary disposition but a grant to two persons as tenants by the entireties when they were in fact not legally married, and was decided with no reference to executory limitations. As shall be seen, the fact that the case here involves executory devises puts it in a completely different posture than *Mitchell.*

What all this leads up to is that we have no difficulty whatever in ascertaining and effectuating the intention of the testatrix because it is manifest from all the provisions, clauses and words of the will itself. Clauses 1, 2 and 3 are in complete harmony, and effect may be given to each of them. What the will does with respect to the grandsons, is to create in them a vested remainder as tenants in common in the property in fee simple subject to two shifting executory interests. It will or may become a present possessory interest immediately and automatically at the death of the second life tenant. Their full enjoyment of their interest is deferred until the termination of the life estates and until they attain the age of 21 years, but it surely vests in them at the testatrix's death because, in addition to the usual reasons for the early vesting of estates, it is by the vesting that the income may be paid to their legal guardian for their education and maintenance. *See Safe Deposit & Trust Company v. Bouse,* 181 Md. 351; *Gittinger v. F. & M. National Bank,* 180 Md. 640; *Plitt v. Peppler,* 167 Md. 252. *See also* Simes & Smith, *The Law of Future Interests* § 113 (2d ed. 1956).

The Court of Appeals discussed executory devises in *Starr v. Starr M. P. Church,* 112 Md. 171, 181-182:

"A limitation after a fee cannot take effect as a remainder, for a remainder must await the regular determination of the preceding estate on which it

---

**9.** Our attention has not been directed, nor are we aware of, a decision of the Court of Appeals since *Mitchell* in which "a tenancy in common with a right of survivorship" has been applied, discussed, or even mentioned. If a cotenancy of such a bastard nature is to be a part of the law of this State, this is not the appropriate case to render it viable.

506

rests, and cannot arise in derogation of it, but such a limitation may be good as an executory devise. The reasons for this rule, which is definite and well established, would be interesting to discuss, but it would unnecessarily prolong this opinion to do more than state it, with some of the authorities by which it is fully recognized. 2 *Blackstone*, 164-171; 4 *Kent*, 198-201; 16 *Cyc.* 648-650; 2 *Wash. R. P.*, secs. 972-3; 1 *Jarman on Wills*, 822-825; *Hill v. Hill et al.*, 5 G. & J. 87; *Battle Sq. Church v. Grant et al.*, 3 Gray, 142. Blackstone (2 *Blackstone*, 172) says that 'An executory devise of lands is such a disposition of them by will, that thereby no estate vests at the death of the devisor, but only on some future contingency.' It is said in 4 *Kent*, 264, that 'An executory devise is a limitation by will of a future contingent interest in lands, contrary to the rules of limitations of contingent estates in conveyances at common law' as 'when the devisor parts with his whole estate, but, upon some contingency, qualifies the disposition of it, and limits an estate on that contingency.' And Mr. Jarman says: 'It will be apparent from what has been stated, that every devise to a person in derogation of, or substitution for, a preceding estate in fee-simple is an executory devise.' 1 *Jarman on Wills*, 824. See also *Battle Square Church v. Grant, supra*; 2 *Wash. R.P.*, sec.973; *Biscoe v. Biscoe*, 6 G. & J. 202; *Allender v. Sussan*, 33 Md. 11." [10]

The law to this effect was early laid down in *Dallam v. Dallam's Lessee*, 7 H. & J. 220, which is quoted with approval in *Deets v. Riggins*, 176 Md. 520. *Fenby v. Johnson*, 21 Md. 106, concerned an executory devise. The devise in

---

**10.** Simes and Smith, *The Law of Future Interests*, § 221 (2d ed. 1956) traces the historical orgin of the executory interest. Of course, they must not be so limited as to offend the rule against perpetuities, and if they are not to vest within the period fixed by that rule they are void. *Starr v. Starr M. P. Church, supra*, at 182. Patently, the executory devises here do not offend the rule.

*Fenby* was to the children of the testator "equally." It continued in pertinent part: "But it is my will, that in case both my children shall die in their minority, unmarried, without issue, and intestate, then I give, devise and bequeath the same to my right heirs." At 110. The testator had two children. One died in her minority, unmarried, without issue, and intestate. The other was in her minority at the time of the suit. The Court held, at 117:

> "In the opinion of this court the children took under this devise as tenants in common in fee in the lands, and an absolute estate in the personalty, which vested upon the death of the testator; and the limitation over upon the contingency named in the will, was good as an executory devise. In such case the weight of authority, as well as of reason, is, that there is no implication of cross-remainders between the devisees, but in case of the death of one, the event which has actually happened, her estate devolved upon her heirs and personal representatives, subject however to be afterwards defeated by the happening of the contingency named in the will."

The distinguishing characteristics of an executory interest in modern times are set out in Simes and Smith, *The Law of Future Interests*, § 221 (2d ed. 1956):

> "First, on the happening of a condition or event, an estate vests in the holder of the executory interest, and it is not vested until that time. So long as it remains a future interest it is non-vested. Second, it must vest in some person other than the creator of the executory interest. Third, with the exception of the executory interest after the determinable fee and the fee simple conditional, it vests in derogation of a vested freehold estate and not at the termination of a freehold estate. Fourth, on the happening of the condition or event, it may become a present interest automatically; no entry or election being necessary."

The devise here has each of these characteristics.

The first executory interest is created by clause 2. Initially, we must determine what the testatrix intended when she said: "And it is my Will that in the event of the death of either of my grandchildren then such share shall go absolutely to the other." We must infer the intention from the four corners of the will. Miller, *The Construction of Wills in Maryland*, § 10 (1927) put it neatly and emphatically:

> "Obviously the most simple and natural way to ascertain what a testator's or grantor's intention was, is to read what he has written, because what he has written was designed by him to express that intention. Just as he has written his will, it must stand. What he meant to say must be gathered from what he did say therein, as viewed from the standpoint he then occupied. The intention which controls in the construction of a will is not the presumed intention of the testator, but the expressed intention. The question is not what the testator meant, as distinguished from what his words express; but simply what is the true meaning of his words; not merely what *he* meant, but what *his* words mean. The court is governed not by what the court may suppose to be the wish of the testator, but by what the testator says; and arguments based upon the supposed or known wishes of a testator are not to be considered unless such wishes are expressed in his will. A will is to be interpreted by what the testator has written, rather than by what he ought to have written; not from what he has omitted to say, but from the words he has used. The object of the court is not to make a will for the testator, and not to determine what he ought to have done, but to find out what he did intend, and the court will therefore carefully examine the language used in the will taken as a whole. But if a testator does not so express his

intention that the court can ascertain it from the will and the surrounding circumstances, the intention cannot be carried out. The obligation of the court is to give effect to the testator's expressed intention, and not to indulge in conjecture however strong; its province is not to speculate upon the intention of the testator, and it is not at liberty to do so. But where it is plain that the testator has not expressed himself as he intended and supposed he had done, and the defect arises from the omission of some word or words, and where it is certain what particular words were thus omitted, they may be supplied by intendment. But whatever may be the general intent of the testator, if it does not appear that he has omitted words intended to be used, it is not competent for the court, by intendment, to reconstruct the will to give effect to such intention." (notes omitted)

Clause 2 presents two possibilities. It applies to pass absolutely the share of a grandchild dying to the grandchild surviving (a) upon the death of the first to die no matter when that death occurs, or (b) upon the death of the first to die before arriving at the age of 21 years, but not thereafter. Examining the language used in the will taken as a whole, and from the words used in clause 2, we think that the testatrix intended the second possibility. We find it plain that she did not express herself as she intended and supposed she had done. The defect obviously arises from the omission of some words, and it is certain what particular words were thus omitted. They were "before arriving at the age of twenty-one years." We supply them by intendment so that clause 2 reads: "And it is my Will that in the event of the death of either of my grandchildren before arriving at the age of twenty-one years then such shares shall go absolutely to the other."

We reach this conclusion because we find it apparent that the three clauses are interrelated and must be read together. When so read, it is inescapable that the testatrix intended

that her estate: (i) go in equal shares to her two grandchildren if both survived to the age of 21 years; (ii) go to one of her grandchildren if only one survived to the age of 21 years; and (iii) go to the Church if both died before arriving at the age of 21 years. The language of the phrases "*in the event of death* of either of my grandchildren" (Clause 2); and "*in the event both of my grandchildren* should die" (Clause 3) manifestly implies events that may not occur. The American Heritage Dictionary of the English Language (1969) defines "in the event" as meaning "if it should happen; in case." Yet, death is certain to occur. Only the time of death is uncertain. Use of the words "*after the death* of my said daughter" in Clause 1, clearly shows that the testatrix consciously intended a distinction in the use of the phrase "in the event." Thus, the intent is clear. When the younger of the two grandchildren reaches 21 years of age, his brother already having attained that age, the basic purpose of the testatrix, as expressed in Clause 1, that they hold the property "absolute and in fee simple to do with as they may see fit and proper," would be achieved, subject only to any life estate in the husband or daughter then existing. When Clause 2 is construed as we have indicated, the three clauses are in perfect complement. Clause 1 declares the basic or primary intent of the testatrix, that her two grandchildren equally share her bounty, provided that both attain the age of 21 years. Clause 2 serves merely to provide that *if* one of the grandchildren were to die before arriving at the age of 21 years, the survivor takes the entire estate. Clause 3 provides that *if* both of the grandchildren were to die before attaining the age of 21 years, the property passes to the Church.

As we have indicated, the will creates two shifting executory interests, the first by clause 2 and the second by clause 3. If both grandchildren attain the age of 21 years, both executory interests are defeated. Upon the first grandson to die before arriving at the age of 21 years, his vested undivided one-half interest as tenant in common is divested from him and shifted to the surviving grandson. If the surviving grandson has not obtained the age of 21 years, he is then vested with the entire remainder interest if there

are outstanding life estates, or a present possessory fee simple estate if the life estates have terminated. But his estate is limited by the second executory interest, which is created by clause 3. If the surviving grandson dies before arriving at the age of 21 years, his interest is divested and shifts to the Church. The executory interest having vested, the Church is indefeasibly vested with the entire remainder if there are outstanding life estates, or a present possessory estate in fee simple absolute if the life estates have terminated. If the surviving grandson has reached 21 years of age when his brother dies before arriving at 21 years of age, the second executory limitation is no longer in effect. Therefore, the survivor becomes indefeasibly vested in the entire remainder if there are outstanding life estates or with a present possessory estate in fee simple absolute if the life estates have terminated.

We now apply the devise as so construed to the situation here. The first life estate had terminated. The second life estate had terminated and when it did, both grandsons had attained the age of 21 years. Therefore, on the death of the second life tenant, George Frederick Boyd and William Dunbar Boyd each was indefeasibly vested with an undivided one-half interest in fee simple as a tenant in common, both the executory interest in clause 2 and the executory interest in clause 3 having been defeated. Thus, upon the death of George Frederick Boyd his interest passed under his will to appellant. The decree of the court below was wrong in that it adjudged that title to the entire property ". . . is now vested in William Dunbar Boyd" and in that it denied Bernadine Boyd any interest in the property.[11] Under the will of her husband, she received his one-half interest as a tenant in common.

> *Decree of 7 June 1974 reversed; case remanded for entry of a decree in accordance with this opinion; costs to be paid by appellee.*

---

11. The general rule is that "The construction of a will, as of other

*Menchine, J., concurring in part and dissenting in part:*

With the exception of that part of the Court's opinion declaring that Clause 2 presents two possibilities and that our decision supplies by intendment the words "before arriving at the age of twenty-one years," I subscribe fully to that opinion and concur in the result announced therein.

I consider, however, that the contingencies to a present possessory interest in the grandchildren as devised by the Will were limited to:

1. The life estates of the husband and of the daughter of the testatrix, and
2. The limitation over upon the contingency set forth in Clause 1.

I regard Clause 2 and Clause 3 as having a bearing on such present possessory interest if and only if, one (under Clause 2) or both (under Clause 3) of the grandchildren were affected by the contingency fixed in Clause 1. The record shows, of course, that they were not so affected.

In short, it is my view that the totality of the provisions of Clauses 1, 2 and 3 compel the conclusion, on the admitted facts of this record, that the grandchildren became vested with a fee simple title as tenants in common under the plain language of the Will, with no second possibility arising

---

written instruments, is a matter of law, and is for the court, and not a jury, to determine." E. Miller, *Construction of Wills* § 8 (1927). *See* 4 *Bowie-Parker: Page on Wills* § 31.16 (1961); G. Thompson, *Wills* § 210 (3rd ed. 1947). The Court of Appeals said in *Stokeley v. Gordon,* 8 Md. 496, 510:

"Where, from the face of the will, in connection with the surrounding circumstances, a case is disclosed, upon which the judicial mind can take hold, and upon principles of reason or logic, arrive at a conclusion in regard to the testator's intention, then the case is one of construction for the court, and not one of intention depending upon extrinsic evidence and to be found by a jury. * * * And it may be added, that this question is a matter of construction for the court, appears manifest from the circumstance, that as far back as Lord Bacon's time, a rule of interpretation was adopted by which cases of this kind were to be determined, and that that rule, with certain qualifications, has been repeated and recognized down to the present period."

See *Warner v. Miltenberger,* 21 Md. 264, 274.

under Clause 2 and with no necessity for supply of words by our decision to establish the intendment of the testatrix.

*Thompson, J., dissenting:*

I respectfully dissent. I fear the majority have engaged in the unwarranted task of rewriting Mrs. Davis's will under the guise of interpretation.

The crucial clauses with which this case is concerned are as follows:

Clause 1:

"And after the death of my said daughter, then said Estate including Real, personal and mixed to my two grandchildren, George Frederick Boyd and William Dunbar Boyd, absolute and in fee simple to do with as they may see fit and proper provided however that said estate shall not pass unto said grandchildren until they shall arrive at the age of twenty one years, share and share alike, but the income to be paid to their legal guardian during their minority for their education and maintenance."

Clause 2:

"And it is my Will that in the event of the death of either of my grandchildren then such share shall go absolutely to the other."

Clause 3:

"And in the event both my grandchildren should die before arriving at the age of twenty one years, then I give bequeath and devise all said property so mentioned to St. Joseph Roman Catholic Church at Morganza, Maryland absolutely but not until all the Covenants and conditions heretofore mentioned have taken place."

While I agree with the legal principles as stated by the majority, I must disagree with the way these principles have

been applied. In order to reach their decision, the majority have added to Clause 2 the words "before arriving at the age of twenty-one years," because, in their view, the testatrix's use of the phrase "in the event of the death of either of my grandchildren" in Clause 2 showed an intent to add such a qualification. While words may be inserted to arrive at the true intent of a testator, insertion is permissible only where the intent is clear. Miller, *The Construction of Wills in Maryland* § 10 (1927). The majority find the requisite intent as discussed above in the use of the phrase "in the event of the death." While the majority's argument has some logical appeal, I do not think the intent of the testatrix is shown with sufficient certainty to allow insertion of a clause not in the original. The intent of the testatrix is more clearly shown by her careful use of the terms "arrive at the age of twenty one years" in Clause 1 and "before arriving at the age of twenty one years" in Clause 3 and by the omission of such language in Clause 2. To me, the omission of the material term in Clause 2 is more significant in determining the testatrix's intent than the use of the phrase relied on by the majority. This omission indicates that the testatrix had a clear idea of the words to use when importance was to be attached to the attainment of age twenty one and of what words to omit when age was not intended to be a factor. By omitting mention of age only in Clause 2, the testatrix's intent is clear: Age was to play no role in the operation of Clause 2.

I would affirm the chancellor's decree even though, I, along with the majority, disagree with his reasoning.